WARE (UNITED STATES v.). See Case No. 16,641.

----

## Case No. 17,173.

### The WAR EAGLE.

[6 Biss. 364.] [1]

Circuit Court, W. D. Wisconsin. June, 1875.

#### LIMITED LIABILITY OF SHIP-OWNERS.

1. A steamer used in the upper Mississippi river, is not within the act of congress of March 3, 1851, limiting the liability of ship-owners.

[Cited in The Mamie. 5 Fed. 820; The Garden City, 26 Fed. 774; The Katie, 40 Fed. 482.]

2. The district court will not, therefore, restrain claimants from suing the owner at common law to recover the full value of freight lost by fire.

[Cited in Goodrich Transp. Co. v. Gagnon, 36 Fed. 127.]

[Appeal from the district court of the United States for the Western district of Wisconsin.]

In admiralty. This was a petition originally presented to the district court by the Northwestern Union Packet Company, owner of the steamer War Eagle, praying for limitation under the act of congress of March 3, 1851, of their liability for loss by reason of the destruction of said steamer and its cargo by fire. The War Eagle was a steamer of more than twenty tons burden, duly enrolled and licensed for the coasting trade, and plying between the ports of Dubuque, Iowa. and St. Paul. Minnesota. touching at intermediate points. While making one of her regular trips, on the 24th day of May, 1870, she was burned with her cargo, her boilers and iron. afterwards raised. being the only salvage. The different owners of the cargo commenced suits at common law against the petitioner to recover the value of their goods, and this petition prayed that the interest of petitioner in the wreck and articles saved might be appraised. and upon payment into court of the amount of such appraisement. the various claimants might be cited to prove their re-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

spective claims against this fund, and the petitioner be relieved under said act from any further liability, and that the prosecution of suits against petitioner for claims arising for such loss be perpetually restrained. The district court held that it had no jurisdiction of the case, and dismissed the petition [case unreported], whereupon petitioner prayed an appeal to the circuit court.

Wm. Hull, for petitioner.

I. C. Sloan, for respondent.

DRUMMOND, Circuit Judge. The only question in this case is whether the War Eagle was within the terms of the act. The district court held that it was not. The War Eagle was a steamer of more than twenty tons burden, duly registered and enrolled under the acts of congress, and engaged in trade and commerce between the several states, but solely on the river Mississippi and its tributaries, when in May, 1870, at La Crosse, it was destroyed by fire, with a large quantity of goods on board. The petitioner claims that the War Eagle was not within the last clause of the act, viz.: "This act shall not apply to the owner or owners of any canal boat, barge or lighter, or to any vessel of any description whatsoever, used in rivers or inland navigation." 9 Stat. 635.

If the War Eagle was a vessel used in rivers or inland navigation as therein meant, then it was not within the terms of the statute, but was subject to its common law liability.

This clause in the statute was the subject of much consideration in the case of Moore v. American Transp. Co., 24 How. [65 U. S.] 1. The question there was whether the navigation of our great northern lakes was inland within the meaning of the law, and the supreme court held that it was not.

In that case the counsel of the defendant contended that the act applied wherever admiralty jurisdiction extends, and the counsel of the plaintiff insisted that navigation of the Mississippi river and its tributaries was expressly within the words of the clause. The court in its opinion refers to the craft named in the clause, as canal boat, barge or lighter, and says that the character of the craft named will serve to some extent to indicate the class of vessels designated by the place where employed. But in another part of the opinion the court speaks of vessels, whatever may be their class or description, solely employed in rivers or inland navigation, the last two words meaning internal waters connected with rivers, such as bays, inlets, straits, etc. Did the court mean by internal waters those exclusively within the limits of some state, or such internal waters as the Mississippi and its tributaries, running through or along several? We hardly think the former was meant, because it was believed congress could not legislate as to these, and so the exception was unnecessary. The clause in question was added to the bill in its passage through the senate, and reference was undoubtedly had to an act of George III., which provided that that act should not extend to the owners of any

lighter, barge, boat, or vessel of any burden or description whatsoever, used wholly in rivers or inland navigation, or vessel not duly registered according to law.

Now if congress intended to exclude from the operation of the act all registered or enrolled vessels, it is certainly singular that the language to that effect in the English statute was omitted from ours. Then it must be borne in mind that the act of 1851 was passed before the decision of the supreme court in the case of The Genesee Chief v. Fitzhugh, 12 How. [53 U. S.] 443, and when among lawyers and judges it was not known that the case of The Thomas Jefferson, 10 Wheat. [23 U. S.] 428, would be reversed, and when the act of 1845, as to admiralty on the lakes, was supposed to depend upon the authority of congress to regulate commerce between the states.

On the whole, notwithstanding the case of Moore v. American Transp. Co. [supra], I cannot doubt that it was the intention of congress to except out of the operation of the act of 1851, a steamer such as the War Eagle.

Decree affirmed.