GOODRICH TRANSPORTATION Co. *v.* GAGNON *et al.*

(*Circuit Court, E. D. Wisconsin.* August 18, 1888.

SHIPPING—LIABILITY OF OWNER FOR TORT—LIMITATION—REV. St. U. S. § 4283.
Act Cong. March 3, 1851, (Rev. St. U. S. § 4283,) limits the liability of ship-owners to their interest in the vessel and its pending freight, "for any embezzlement, loss, or destruction by any person, of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred without the privity or knowledge of such owner or owners." *Held,* that the words, "for any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred," must be construed with regard to the subject-matter of the statute, and refer only to such acts, things, losses, and damages as to which relief can be had in a court of admiralty, and do not include liability for the destruction of buildings and goods on the land by fire alleged to have been communicated by a vessel, though duly licensed and engaged in the coast trade.

In Equity. On motion to dissolve injunction.
*Chas. W. Bunn* and *Robert Rae,* for plaintiff.
*Geo. G. Greene* and *J. G. Jenkins,* for defendants.
Before HARLAN, Justice, and DYER, J.

Mr. Justice HARLAN delivered the opinion of the court.

On and prior to the 20th day of September, 1880, the Goodrich Transportation Company, a corporation organized under the laws of Wisconsin, was engaged in interstate commerce upon Lake Michigan, as well as upon

navigable waters immediately connected therewith; employing, in that business, a number of propellers and steam-boats, of which it was the owner. Among such steam-boats was the Oconto, a vessel of upwards of 20 tons burden, duly enrolled and licensed, under the laws of the United States, for the coasting trade, and not being, it is alleged, a canal-boat, barge, or lighter, nor used in river or inland navigation. On the day above named, and 'while prosecuting one of its regular voyages from Chicago, it entered the port of Green Bay, a city in the state of Wisconsin, at the head of Green Bay, where the Fox river, a large, navigable stream, flows into it. After it had passed a certain planing-mill, located within the limits of that city, a fire broke out therein, which was communicated —from the vessel, as was contended—to a large number of buildings near the shore, causing damage to their owners in the sum of not less than $125,000, and destroying goods and other property contained therein of not less than $50,000. A part of the property so destroyed was insured against fire in the Phoenix Insurance Company. The value of the Oconto, at the time of the fire, was about $12,000. The amount of its freight then pending was only about $400. Some of the sufferers by the fire, claiming that the damage to their property was the result of negligence upon the part of those managing the Oconto, instituted suits against the Goodrich Transportation Company in the courts of Wisconsin. Suits of like character being threatened by others, that company sought, by libel filed in the district court of the United States for the Eastern district of Wisconsin, sitting in admiralty, not only to contest its liability for the damage done, but to have its liability, if any existed, limited as provided in those sections of the Revised Statutes of the United States which contain, substantially, the provisions of the act of congress approved March 3, 1851, entitled "An act to limit the liability of ship-owners, and for other purposes." 9 St. 635; Rev. St. §§ 4282-4289, inclusive. The district court of the United States having denied a motion to dismiss the proceedings instituted therein by the transportation company, (26 Fed. Rep. 713,) and having made an order designating appraisers to value the Oconto at the time of the fire, as well as its freight earned on the voyage, the insurance company and the plaintiffs who brought the suits for damages in the state court united in an application to the supreme court of the United States for a writ of prohibition to the judge of the former court, to prevent it from entertaining jurisdiction of the suit brought by the transportation company for limitation of its liability. The writ was awarded, the supreme court holding that the district court was without jurisdiction in the premises. It was held, in conformity with the decision in *The Plymouth*, 3 Wall. 20, that "the true meaning of the rule of locality in cases of marine torts was that the wrong complained of must have been committed wholly on navigable waters, or, at least, the substance and consummation of the same must have taken place upon those waters, to be within the admiralty jurisdiction;" that, although the vessel which communicated the fire was a maritime instrument, the jurisdiction of the admiralty court depended

upon the wrong having been committed on navigable waters and that "the substantial cause of action, arising out of the wrong, must be complete within the locality on which the jurisdiction depended;" that the remedy for wrongs not committed on navigable waters was in the courts of common law; and since, for these reasons, a court of admiralty would have no jurisdiction of a suit either *in rem* or *in personam*, brought by a sufferer from the fire in question to recover damages from the owner of the vessel, that court could not acquire jurisdiction to determine the question of the owner's liability, or to ascertain and award damages, by a proceeding such as the transportation company instituted. But the court said:

"Our decision against the jurisdiction of the district court is made without deciding whether or not the statutory limitation of liability extends to the damages sustained by the fire in question, so as to be enforceable in an appropriate court of competent jurisdiction. The decision of that question is unnecessary for the disposition of this case." *Ex parte Insurance Co.*, 118 U. S. 610, 618, 625, 7 Sup. Ct. Rep. 25.

The question thus reserved is supposed to be raised by the present suit in equity, brought originally in the circuit court of Milwaukee county, Wisconsin. The plaintiff is the Goodrich Transportation Company. The defendants, except the insurance company, are sufferers by the above-mentioned fire, and have suits pending in the courts of Wisconsin, in which they seek to recover damages for the destruction of their buildings and goods by such fire. The bill also proceeds generally against "all persons interested, who may come in under the decree herein, and take the benefit thereof." It sets out, in substance, the above facts, and prays that the liability of the plaintiff for the damages in said several suits claimed may be adjudged to be limited to the value of the vessel at the time of the fire, increased by the value of its then pending freight; that the demands of the several claimants be investigated, and their respective amounts ordered to be paid out of the value of the vessel and freight, which amount the plaintiff offered to bring into court, or give bond therefor; that, if such value be inadequate for their payment in full, the claimants be satisfied *pro rata* out of such fund; that upon such payment the plaintiff be adjudged to be discharged from all further liability to the defendants, and to each of them, on account of said fire; that the defendants be enjoined from the further prosecution of their suits at law in the courts of Wisconsin; and that the plaintiff have such other relief as may be proper. The state court, upon bond being given to pay the value of the vessel and pending freight into court for distribution, awarded the injunction asked. The defendants having answered, the suit was removed into this court upon the general ground that it is one arising under the laws of the United States.

The case is now before the court upon a motion to dissolve that injunction. This motion suggests several questions of importance, which have been discussed by the counsel of the respective parties with marked ability. But the fundamental inquiry is whether the statutory limita-

tion of liability extends at all to the fire in question,—a liability which, according to the principles announced in *Ex parte Insurance Co.*, cannot be ascertained and limited by any proceedings had in the admiralty courts. The contention of the plaintiff is that the statute embraces all liabilty for damage done by a vessel without the knowledge or privity of the owner, whether the injury is consummated on land or water, and without regard to the nature of the property injured, or the uses to which it was devoted when destroyed, or its connection with the general business in which the vessel is engaged. It is argued that the object of the rule of limited liability is to promote and encourage shipping, and that the authority of congress to prescribe such a rule, in place of the absolute one of *respondeat superior*, to be enforced in all courts, state and federal, is found in its power, under the constitution, to regulate commerce with foreign nations and between the several states,—a power which, it is insisted, includes not only authority to regulate navigation and traffic generally, and the ships and vessels employed as instruments of commerce, but the liability of their owners arising from the use of such instruments in commerce. In behalf of the defendants it is contended that regulations as to liability for the destruction of property not in its nature maritime, nor in its use connected with commerce, constitute an essential part of the police power of the state, the proper exercise of which is vital to the protection of the lives and property of its people; and that, even if it be competent for congress, under its general power to regulate commerce, to supersede or annul state laws upon the same general subject, so far as the latter apply to injuries done by vessels while navigating public waters, there is nothing in the statutes invoked by the plaintiff clearly indicating that congress intended to go that far, or to prescribe any rule of liability, except for the special cases which, under the statute, are cognizable in a court of admiralty.

It was conceded in argument that, if the property of the defendants had been destroyed by a fire caused by the negligence of individual or corporate persons not engaged in navigating the waters in question, the latter would have been liable, under the settled law of Wisconsin, to respond in damages for the value of the property destroyed. So that, if the present proceeding to ascertain and limit the liability of the plaintiff to the actual value of the vessel Oconto and her pending freight is sustained, it can only be upon the broad grounds suggested by the learned counsel of the plaintiff. Section 4282 exempts the owner of any vessel from liability for damage done by fire—not caused by his design or neglect—"to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel." Section 4283 makes the value of the owner's interest in any vessel, and of its pending freight, the limit of his liability "for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred, without the privity or knowledge of such owner or owners."

As to section 4289, declaring that the foregoing and other provisions in the title of "Commerce and Navigation" shall not apply to the owners of canal-boats, barges, or lighters, nor to vessels of any description used "in rivers or inland navigation," it has no bearing upon the present case; for the Oconto was not a canal-boat, barge, or lighter, nor was the navigation in which it was engaged "inland" within the meaning of the statute. *Moore* v. *Transportation Co.*, 24 How. 1; *The War Eagle*, 6 Biss. 364. See, also, *The Mamie*, 5 Fed. Rep. 813; *The Sears*, 8 Fed. Rep. 365; *The Garden City*, 26 Fed. Rep. 766.

Recurring to the sections of the Revised Statutes which must control our decision, it is clear that the plaintiff's case requires the court to hold that congress intended the words, "for any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred," to include all damage to, or destruction of, property of every kind on land, although unconnected with navigation or commerce, provided only that such damage or destruction was caused by the neglect of those in control of the vessel while it is actually employed in navigating the public waters of the United States. It does not seem to the court that the statutory provisions in question ought to be so construed. The general words above quoted should be interpreted in the light of the subject-matter of the statute, and must be restricted by the special words previously used in the same and preceding sections. The enumeration of acts, things, losses, damages done or occasioned, are those of admiralty jurisdiction, according to the maritime law of the United States. The specific provision made for the distribution of the proceeds of the value of the offending vessel and its freight among the owners of property embezzled, lost, or destroyed, on the voyage of the offending vessel, has reference to such persons or owners only as can maintain an action, civil and maritime, in the admiralty courts, on account of such embezzlement, loss, or destruction of property. In other words, the losses, with respect to which congress designed, in the interest of commerce, to extend the privilege of limited liability, are maritime losses. The acts, matters, things, losses, damages, and forfeitures referred to in section 4283 are those belonging to the classes specifically described in the context; that is, they must be acts, matters, things, losses, damages, or forfeitures done, occasioned, or incurred in such manner that it may be said that the substance and consummation of the particular wrong or wrongs complained of took place and became complete on the waters navigated by the offending vessel. That cannot be said in reference to the losses here in dispute. We do not believe that it was within the mind of congress to establish a rule of limited liability to be applied by all courts, federal and state, for injuries done without the privity or knowledge of its owner, by those in charge of a vessel, to property on land, and in respect to which injuries the courts of admiralty could not take cognizance.

Although this precise point has not been determined by the supreme court of the United States, the conclusion reached is in harmony with what that court has said in reference to the general scope and purpose

of the statutes under examination. In *Norwich Co.* v. *Wright*, 13 Wall. 104, 123, the court, after observing that no tribunal was better adapted than a court of admiralty to administer the relief given by the statute, and that it was every-day practice for such courts to distribute the proceeds of a vessel or other fund, according to the respective liens and rights of the parties, said:

"Congress might have invested the circuit courts of the United States with the jurisdiction of such cases by bill in equity, but it did not. It is also evident that the state courts have not the requisite jurisdiction. Unless, therefore, the district courts themselves can administer the law, we are reduced to the dilemma of inferring that the legislature has passed a law which is incapable of execution."

So in *Steam-Ship Co.* v. *Manufacturing Co.*, 109 U. S. 578, 593, 3 Sup. Ct. Rep. 379, 617, the court, after referring to the acts of 1792, (1 St. 276,) 1828, (4 St. 280,) and 1842, (5 St. 518,) as giving power to make the supplementary rules of practice in admiralty, promulgated May 6, 1872, (13 Wall. xii., xiii.,) said that the subject of those rules "is one preeminently of admiralty jurisdiction. The rule of limited liability prescribed by the act of 1851 is nothing more than the old maritime rule administered in courts of admiralty in all countries except England from time immemorial; and, if this were not so, the subject-matter itself is one that belongs to the department of maritime law."

Upon the whole case, the court is of opinion that the act of congress prescribing the rule of limited liability for the benefit of the owners of ships and vessels has reference only to maritime losses in respect to which relief can be given in a court of admiralty. In this view, it is immaterial to inquire whether an act having the scope and effect attributed by the plaintiff to that of 1851 would be constitutional.

The present motion to dissolve the injunction having been heard before Judge DYER and myself, this opinion has been submitted to him, since his retirement from the bench, for examination. He authorizes me to say that it meets his approval. The injunction is dissolved.