## THE SAN RAFAEL.

### In re NORTH PACIFIC COAST R. CO.

(District Court, N. D. California. October 28, 1904.)

#### No. 13,112.

1. SHIPPING—PROCEEDINGS FOR LIMITATION OF LIABILITY—RIGHT TO MAINTAIN.

The claim of a passenger on a steam ferryboat for damages growing out of a collision is one for a maritime tort within the jurisdiction of a court of admiralty, and against which the owner of the vessel is entitled to a limitation of liability, although such owner is a railroad company operating the vessel in connection with its road, and the passenger was being carried on a ticket which entitled him to both land and water carriage.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 644.

Limitation of shipowners' liability, see note to The Longfellow, 45 C. C. A. 387.]

2. SAME.

The right of the owner of a vessel to a limitation of liability for damages resulting from a collision on a surrender of such vessel is not affected by the fact that it was also the owner of the other vessel concerned in the collision, which is not surrendered, even though such vessel was partly in fault for the collision, where such ownership is not disclosed in the petition, since in such case the liability of the petitioner as owner of the vessel surrendered is all that is before the court for consideration or adjudication, and the right of damage claimants to proceed against the other vessel or against petitioner as its owner will not be affected by the proceeding.

In Admiralty. Proceeding for limitation of liability.

Geo. W. Towle, Jr., for North Pacific Coast R. Co.

Morehouse & Alexander, for J. S. McCue.

DE HAVEN, District Judge. The North Pacific Coast Railroad Company, a corporation, commenced this proceeding by filing its petition for a limitation of liability, alleging that it was the owner of the steamer San Rafael on the 30th day of November, 1901, when a collison occurred between that steamer and the steamer Sausalito in the Bay of San Francisco; and, further, "that said collision was an unavoidable accident, due solely and only to the density of the fog then and there prevailing in the said Bay of San Francisco, and particularly in the locality thereof through which said steamer was then and there navigating, which said fog prevented and obscured a view or vision of approaching vessels or objects, and rendered the fog signals situate on said San Rafael and on any such approaching vessels or objects and on said steamer Sausalito, with which said San Rafael collided, * * * of a more or less uncertain character and guide to go by." It is also alleged that one J. S. McCue, prior to the filing of the petition, commenced an action against the petitioner in one of the courts of the state to recover damages for alleged injuries sustained by him while a passenger on the steamer San Rafael by reason of such collision, and also for damages on account of merchandise alleged by him to have been on the San Rafael at the time, and lost as a result of said collision; that said actions were still pending. The petitioner asks for a judgment exempting it from all liability, and also prays that, in case it shall be found that the petitioner or the steamer San Rafael is liable for injuries to persons or for loss of property, caused by said collision, then such liability shall be limited to the value of the petitioner's interest in the steamer San Rafael and her freight then pending. The monition issued in this proceeding was served upon J. S. McCue, and he presented his claim, and also filed an answer to the petition. The answer alleges that the petitioner is a railroad corporation, and was at the time of the collision referred to in the petition, and for a long time prior thereto, engaged as such in the business of a common carrier of passengers for hire, between the city of San Francisco and the city of San Rafael in the county of Marin, state of California, and, as a part of its system and property, was the owner of and engaged in running the steam ferryboats San Rafael and Sausalito to and from the city of San Francisco and the city of Sausalito, the said steamers meeting and passing each other in the Bay of San Francisco in making such trips; that on the 30th day of November, 1901, he, the said McCue, was the owner, by purchase from the North Pacific Coast Railroad Company, of an individual monthly commutation ticket for the month of November, 1901, which entitled him to make one round trip daily during that entire month, between the city of San Francisco and the city of San Rafael; that such ticket was not sold or purchased as a steam ferry ticket, but as a railroad ticket, nor was it supervised "or in any manner under the control or supervision of the master or other officer of said vessels, or either of them"; that on that day he exhibited his ticket to the petitioner's agent at San Francisco, and was permitted "to enter into and upon the said steam ferryboat San Rafael, and was then and there ac-

cepted by said railroad company as a railroad passenger from its said station at San Francisco to its said destination at said San Rafael; that the said ferry trip from said San Francisco to said Sausalito was a part of the trip provided by said railroad company, and included in the said contract of transportation, but not specially or separately mentioned therein; that the said steam ferryboat San Rafael was not run or managed as a separate or independent line of business, but as a link or incident of said railroad contract and railroad business of said North Pacific Coast Railroad Company." The answer also alleges that while McCue was on board the steamer San Rafael in making the trip aforesaid he was injured in the collision of that steamer with the Sausalito. It is further alleged "that the said two steam ferryboats being at the time of said injuries the property of the said North Pacific Coast Railroad Company, and run, managed, operated, and controlled by it at the time of said collision and the said injuries, and engaged in the same service, and the fault being in the management of one and both of said vessels, and caused by the negligence of said railroad company, its agents, servants, and employés, * * * said North Pacific Coast Railroad Company has not the right and is not authorized or empowered to limit its liability to the said steam ferryboat San Rafael, or to any limitation at all," under the provisions of the Revised Statutes of the United States, for the reasons, first, "that said contract of carriage was a land contract, and not an exclusive maritime contract; * * * and, secondly, for the reason that the said contract of carriage was the direct and personal contract of the North Pacific Coast Railroad Company; * * * and for the further reason that said collision was the joint act of both of said vessels, and caused through the joint fault of both, and both vessels being the property of said railroad company, and being at said time under the control of and being run and managed by said company in the same service, * * * and the said North Pacific Coast Railroad Company, not having surrendered both of said steam ferryboats for appraisement or into the hands of a trustee, cannot limit its liability in this proceeding"; and upon these grounds the court is asked to dismiss the petition.

1. It appears from the evidence that McCue was a passenger on the San Rafael at the time of the collision, traveling upon a commutation ticket issued by the petitioner, and good for one round trip daily between the cities of San Francisco and San Rafael. The distance between these points is 18 miles. In going from San Francisco to San Rafael over the route named in McCue's ticket, the distance traveled is 6 miles by water on the Bay of San Francisco, and thence by railroad 12 miles to the city of San Rafael; but there was no understanding or agreement between the parties that the price paid for the ticket should be apportioned between the petitioner's railroad and the steamers connecting therewith. Upon this state of facts it is very earnestly insisted by respondent, McCue, that his contract with the petitioner was an entire contract for safe transportation between San Francisco and San Rafael, and not within the jurisdiction of a court of admiralty, because it was to be partly performed on land, and that, therefore, this court had no jurisdiction to limit the petitioner's liability for a breach of such contract. The petitioner seeks in this proceeding to limit its

liability as owner of the San Rafael for damages to person and property growing out of the collision between that steamer and the Sausalito, and the petition is based upon that clause of section 4283 of the Revised Statutes [U. S. Comp. St. 1901, p. 2943], which provides that "the liability of the owner of any vessel * * * for any loss, damage, or injury by collision * * * shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight pending." The claim of McCue is for damages growing out of the collision between the petitioner's steamer, upon which he was traveling, and another, and is within the letter of the statute, and therefore one the liability for which may be limited in this proceeding. It is, of course, true that a District Court has no jurisdiction to limit liability upon any claim for damages, unless it could take original cognizance of a suit in rem or in personam to recover the loss or damage for which the claim is made. Ex parte Phenix Insurance Company, 118 U. S. 610–624, 7 Sup. Ct. 25, 30 L. Ed. 274. But the real nature of the claim made by the respondent, McCue, is for damages growing out of the collision between the San Rafael and Sausalito on the navigable waters of the Bay of San Francisco, which collision he alleges was caused in part by the negligence of the officers in command of the San Rafael. His claim, therefore, is for damages for an alleged marine tort. In re Long Island Transportation Company (D. C.) 5 Fed. 599. It cannot be successfully contended that an action, in personam, or in rem, for the recovery of damages for such a wrong, would not be cognizable in a court of admiralty. This being so, it would seem clear that under the rule declared by the Supreme Court in the case above cited this court is authorized in this proceeding to limit the petitioner's liability upon the claims filed by McCue; and the fact that he was at the time of the collision rightfully on the San Rafael as a passenger under a contract which entitled him also to transportation upon the petitioner's railroad connecting with that steamer at the city of Sausalito does not oust this court of jurisdiction. The fact that he was a passenger under such a contract would not deprive him of the right to sue in a court of admiralty for the tort of which he complains. The Willamette Valley (D. C.) 71 Fed. 712. "Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." The Plymouth, 3 Wall. 36, 18 L. Ed. 125.

2. It is also claimed that the proceeding should be dismissed, because the steamer Sausalito owned by the petitioner, and which respondent alleges was equally in fault with the San Rafael for the collision, has not been surrendered to the court for the benefit of those claiming damages growing out of the collision. It is a sufficient answer to this to say that the petitioner does not seek to limit any liability which it may be under as owner of the steamer Sausalito; and in my opinion the right of the respondent, or any other person injured by the collision referred to, to proceed against the steamer Sausalito or the petitioner, in so far as that vessel is liable for damages growing out of such collision, is not affected by this proceeding. The petitioner does not allege that it is the owner, or has ever been the owner of the steamer Sausalito,

and the decree in this case will be restricted to an adjudication of its liability as owner of the steamer San Rafael.

3. There was no evidence given upon the trial bearing upon the allegation of the petition that the collision was the result of inevitable accident. The claim of the petitioner for exemption from all liability must therefore be denied, and a decree entered limiting its liability to the appraised value of the San Rafael and freight pending. Further hearing of the case upon the question of the amount of damages may be brought on by either party upon notice to the other.