### HALL et al. v. NORTH PACIFIC COAST R. CO.

(District Court, N. D. California. December 16, 1904.)

#### No. 13,186.

1. DEATH—EVIDENCE.

In an action for the alleged death of a passenger resulting from the sinking of a ferryboat in a collision, evidence reviewed, and *held* sufficient to sustain a finding that deceased was a passenger on the boat that sunk, and lost his life in the collision.

2. COLLISION—FERRYBOATS—MUTUAL FAULT.

Where two ferryboats approaching each other attempted to cross courses in a dense fog, when neither could see the other in time to avoid a collision, they were both at fault—the one for attempting the maneuver; and the other in assenting to it and putting her wheel hard astar-

board, causing her to swing one point nearer to the other boat, though she immediately stopped and reversed her engines.

3. SAME—LIMITATION OF LIABILITY.

Where, after collision, the corporation owning both boats filed a petition to limit its liability with reference to the boat lost only, and did not offer to surrender the colliding boat, an interlocutory decree that the owner of the boat lost was entitled to limit its liability to the appraised value of such boat with its freight pending was no bar to libelant's subsequent action against the owner for damages for the death of a passenger in such collision, in which it was held that both boats were at fault, though libelant had appeared and presented a claim for such damages in the limitation proceeding.

[Ed. Note.—Limitation of vessel` owner's liability, see note to The Longfellow, 45 C. C. A. 387.]

4. SAME—JUDGMENTS—SATISFACTION.

Where libelant appeared in a proceeding by the owner of certain ferryboats to limit liability as to one of them for a collision, and filed a claim for death of a passenger, the owner of the boats, on satisfying the decree in such proceeding, would be entitled to have the amount paid libelant thereunder deducted from the amount of damages awarded her in a subsequent suit for damages on the same cause of action.

5. SAME—DAMAGES.

Where deceased, at the time of his death in a collision at sea, was between 52 and 53 years of age, and had been living with his family, consisting of himself and seven children, damages to the extent of $5,000 were recoverable therefor.

H. V. Morehouse, for libelant.
Wm. W. Deamer, for respondent.

DE HAVEN, District Judge. This is a libel in personam, brought by Patrick Cassidy, as guardian ad litem of Catherine Hall, an incompetent person, and also of her minor children, to recover from the defendant damages alleged to have been sustained by those for whom the action is prosecuted by reason of the drowning of one Alexander Hall as the result of a collision between the steam ferryboats San Rafael and Sausalito on November 30, 1901. The libel alleges that Hall was a passenger on the San Rafael at the time, that the defendant was the owner and engaged in operating both of the colliding steamers, and that the collision was caused by the negligence of the defendant in their navigation. The defendant, in its answer, denies that Hall was a passenger on the San Rafael, or that he was drowned as a result of the collision referred to in the libel; also denies that such collision was caused by the negligence of the defendant; and also pleads in abatement certain proceedings prosecuted in this court by the defendant for limitation of liability for the damages growing out of said collision.

1. The evidence bearing upon the question whether Alexander Hall was a passenger upon the San Rafael, and lost his life in the collision, is entirely circumstantial. He was about 52 years of age, and resided near Sacramento city, with his family, consisting of himself and seven children. His wife was in another part of the state under treatment for some mental disease. The evidence shows that he was a kind father, seldom away from his children, and never for more than a few days. He left his home on the day of the collision with the

avowed purpose of going to San Rafael, to visit his brother-in-law, and reached Oakland about 5 o'clock in the afternoon of that day, and was last seen on the ferryboat leaving Oakland at that hour for San Francisco. This boat reached San Francisco in time for him to have taken passage on the San Rafael on the fatal trip when she came into collision with the Sausalito and was sunk. He has never been heard of since. While it must be admitted that these facts, in the absence of direct proof that he was on the San Rafael when she left San Francisco on her last trip, do not make a very strong case in favor of the contention of the libelant that Hall was a passenger on the San Rafael, and was drowned, still it cannot be said as a matter of law that they are insufficient to prove the fact thus contended for. The most reasonable conclusion to be drawn from these facts is that he was a passenger on the San Rafael, and was drowned. There is nothing in the evidence to suggest any other cause for his continued absence from home and family.

2. The facts relating to the collision between the San Rafael and Sausalito, and which the libelant insists show negligence upon the part of the servants of the defendant in the navigation of both steamers, may be very briefly stated: The San Rafael left San Francisco for Sausalito about the hour of 6:15 on the evening of November 30, 1901, and the Sausalito left the town of Sausalito for San Francisco at about the same time. The night was dark, and the fog very thick. Just after passing Alcatraz Island, the master of the Sausalito heard the fog whistle of the San Rafael, from one-half to one point off his port bow, and shortly thereafter the San Rafael sounded two whistles, indicating that she was going to port. The Sausalito answered with two whistles, and the wheel of the Sausalito was immediately put hard astarboard, for the purpose of changing her course to port. The master of the Sausalito testified, in substance, that he knew the San Rafael was in error in giving the passing signal to port, and that, after answering the same, he at once gave orders to his engineer to stop and back his vessel, and at the same time gave three blasts of his whistle, to notify the other steamer that his engines were reversed. The engines of the San Rafael were also reversed about the same time, and within a very short time thereafter—not more than two minutes—the collision occurred, the bow of the Sausalito striking the San Rafael an angling blow on her starboard side, and injuring her to such an extent that she sank in 20 minutes, and became a total loss. The evidence also shows that just prior to the collision the Sausalito had swung to port one point. There was a strong ebb tide pressing against the side of the San Rafael at the time, and the defendant claims that the Sausalito was not under headway, and that the collision was caused by the drifting of the San Rafael upon the Sausalito. In the view I take of the case, it is not necessary to determine whether this claim is sustained by the evidence or not. My conclusion from all of the evidence is that the collision was caused by the mutual fault of the steamers in attempting to cross courses in a dense fog, when neither could see the other in time to avoid a collision. It is true the first error was committed by the San Rafael, but it was certainly an error upon the part of the Sausalito to assent to the San Rafael's pro-

posed change of course, and to starboard her wheel for the purpose of passing to port; and the evidence does not satisfy me that the effect of this error was rendered harmless by the subsequent action of the Sausalito in stopping and reversing her engines. She had swung to port one point, and her wheel was still hard astarboard at the time of the collision, and, in my opinion, in thus changing her course, she contributed to the cause of the collision.

3. The defendant filed in this court a petition to limit its liability, as owner of the steamer San Rafael, for all damages growing out of the collision mentioned in the libel. The libelant here appeared in the proceeding as guardian ad litem of the widow and children of Alexander Hall, and presented his claim for the same damages sought to be recovered by him in this action. An interlocutory decree has been entered in that proceeding, which decrees that the defendant "is entitled to limit its liability, as owner of the steamer San Rafael, for and on account of the matters and things in its said petition alleged, * * * and its liability, as owner of the steamer San Rafael, is limited to the appraised value of the said steamer San Rafael with its freight pending." It is claimed by the defendant that upon these facts the libelant is not entitled to recover in this action, and the same should abate. I cannot give my assent to this contention. The defendant in the proceeding referred to never sought to limit its liability, as owner of the Sausalito, for the damages resulting from the collision between the San Rafael and Sausalito, and it is apparent from the decree therein that the court did not intend to limit the liability of the defendant for any wrongful act of the Sausalito contributing to such collision. It may be conceded that the court ought in that proceeding to have required the defendant to also surrender the Sausalito, and thereupon have limited the liability of the defendant to the value of both steamers, and thus have disposed of all questions growing out of the collision in one action; but this was not done, and, not having been done, the right of the libelant to maintain this action is not affected by the decree limiting the defendant's liability as owner of the San Rafael. Of course, when the defendant satisfies the decree in that proceeding, it will be entitled to have the amount paid to the libelant thereunder deducted from the amount of damages awarded by the decree herein. In this way, the defendant will be allowed to satisfy both decrees by the payment of the actual amount of damages for which it is personally liable.

4. Upon the question of damages there is but little to be said. The deceased was 52 or 53 years of age at the time of his death. There is no evidence in relation to his average earnings, but the court will be warranted in presuming that he was able to support his family. Besides, the loss of the training and counsel of a discreet and kind father may be taken into consideration in fixing the damages sustained by his minor children by reason of his death. Shearman & Redfield on Negligence, § 771.

My conclusion is that the libelants are entitled to recover the sum of $5,000 as damages, and costs, with interest from date until the decree is satisfied; the decree to be satisfied by the payment of the sum so awarded, less any amount which may be paid to the libelants upon

the decree rendered in their favor in the Matter of the Petition of the North Pacific Coast Railroad Company, 134 Fed. 749, for a limitation of its liability, filed in this court, and numbered 13,112.

Let a decree be entered in accordance with the foregoing opinion.