# EX PARTE PHENIX INSURANCE COMPANY & Others.

ORIGINAL.

Argued October 12, 1886.—Decided November 1, 1886.

A District Court of the United States, in Admiralty, has no jurisdiction of a petition by the owner of a steam vessel for the trial of the question of his liability for damage caused to buildings on land by fire alleged to have been negligently communicated to them by the vessel, through sparks proceeding from her smoke-stack, and for the limitation of such liability, if existing, under §§ 4283 and 4284 Rev. Stat.

On the 14th of January, 1886, the Goodrich Transportation Company, a Wisconsin corporation, filed, in the District Court

of the United States for the Eastern District of Wisconsin, a petition for a limitation of its liability, as owner of the steamer Oconto, claiming the benefit of the provisions of sections 4283 and 4284 of the Revised Statutes.   The substantial matters set forth in the petition are these: The Oconto was on a voyage from Chicago, Illinois, through Lake Michigan and Green Bay, to the city of Green Bay, in Wisconsin, which she approached by entering the mouth of the Fox River.   While she was passing up the river, opposite the city, on the 20th of September, 1880, a fire broke out in a planing-mill which the steamer had passed, and it spread to other buildings, about sixty seven being destroyed or injured, causing a damage of not less than $100,000 to the buildings and property in them. Such damage exceeds the value of the steamer, and of her freight pending at the time of the fire, that value being about $12,400.   There was insurance against fire on some of the buildings and property.   The owners and insurers claimed that the fire was negligently communicated to the planing-mill from the steamer, and that the corporation was liable for all the loss and damage occasioned by the fire.   Some of the owners sued it in State courts in Wisconsin to recover damages, by six suits, in which the Phenix Insurance Company, as insurer, was joined as a co-plaintiff.   One of those suits had been disposed of by a judgment in favor of the corporation.   In another, a judgment against the corporation, for $2570 and costs, was rendered in March, 1885.   An appeal from it by the corporation to the Supreme Court of Wisconsin is pending. The other four suits are pending.   Other persons are threatening to sue the corporation by like suits.   It denies its liability for any loss or damage occasioned by the fire, and insists that the fire did not originate from, or was not negligently communicated from the Oconto, but says that, if it is so liable, the fire originated, and the losses and damages were occasioned, without the privity or knowledge of the corporation; and that it desires as well to contest its liability, and the liability of the vessel, for such losses and damages, as also to claim the benefit of §§ 4283, 4284 Rev. Stat., and to limit its liability to the value of the vessel and her freight then pending.   It offers to

enter into a stipulation with sureties to pay into court the value of the vessel, and the amount of her pending freight, whenever ordered so to do. The prayer of the petition is for a decree that the corporation may have the benefit of such statutory provisions; that the value of the vessel immediately after the fire, and the amount of her freight then pending, be appraised; that the corporation may enter into a stipulation to pay such value and amount into court when required; that a monition issue for the proof of claims; that a commissioner be designated before whom claims shall be presented, and before whom the corporation may appear and contest said claims, and its liability on account of any loss or damage occasioned by the fire; that if it shall appear that the corporation was not liable for any such loss or damage it may be so finally decreed, or, otherwise, that the moneys secured by the stipulation be divided *pro rata* among the claimants; and that the prosecution of all the suits be restrained.

On this petition an order to show cause, returnable February 1, 1886, was made. The Phenix Insurance Company and the other plaintiffs in the five pending suits filed an answer, setting forth that, with the exception of the insurance company, they all were, and had been from before the fire, citizens of Wisconsin; that the amount of the insurance the company had made on the property covered by the five suits was $9700; and that the value of the property so insured and uninsured, belonging to the respondents, and partly insured in the insurance company, amounted to $28,000, with interest from the date of the loss. The answer also contained these statements: The property burned was situated on the shore of Fox River, wholly in the body of the city of Green Bay, and at a great distance from any navigable stream or other waters within the jurisdiction of the United States. The negligence of the owner of the steamer in not having on her a contrivance to prevent the escape of sparks and fire from her smoke-stack, and in starting her from her wharf with the exhaust on the inside of her smoke-stack, within the city of Green Bay, caused the fire, the shore being covered with dry wooden buildings, and a heavy wind blowing across the course of the vessel toward the shore,

and her smoke-stack throwing out large quantities of sparks, which were carried by the wind on to the shore and set fire to a planing-mill, from which the flames spread to the other buildings and property. The suits were all of them brought in the fall of 1880. The answer alleged that the court ought not to take jurisdiction of the petition, because the liability, if any, accrued by reason of a tort committed on the land to real estate in the body of a county and a State, and not on any navigable waters of the United States; and that the matters complained. of were purely of common-law cognizance, and of right triable by a jury, and not by a commissioner appointed under the admiralty rules applicable to such proceedings.

The respondents moved to dismiss the petition for want of jurisdiction, which motion was denied, and the court, on March 15, 1886, made an order appointing appraisers to appraise the value of the steamer as it was on September 20, 1880, with the value of her freight earned on the voyage she was on.

The Phenix Insurance Company and the other plaintiffs in the five suits presented to this court a petition for a writ of prohibition to the judge of the District Court, prohibiting him from proceeding to give the relief prayed for in the petition of the owner of the vessel.

*Mr. Robert Rae,* for petitioner.

*Mr. George G. Greene* and *Mr. James G. Jenkins,* opposing. It is not disputed that the Oconto was a vessel within the act, and that it was not within the exception of § 4289 Rev. Stat. *Moore* v. *American Transportation Co.,* 24 How. 1; *Walker* v. *Transportation Co.,* 3 Wall. 150.

I. The statute embraces all liability for damage done by the vessel without the knowledge or privity of the owner, whether consummated on land or on water. *Norwich Co.* v. *Wright,* 13 Wall. 104; *Prov. & N. Y. Steamship Co.* v. *Hill Mf'g Co.,* 109 U. S. 578; *The Scotland,* 105 U. S. 24; *Moore* v. *American Transportation Co.,* 24 How. 1. Maritime commerce is largely carried on by steam vessels. The danger of firing property on shore, and otherwise injuring it, from negli-

gence by or on the vessel is as frequent and imminent as any other danger from such negligence; and the consequences to the owner by reason of liability therefor may be even more disastrous than from negligence in navigation on the water. See *Ryan* v. *N. Y. Central Railway Co.*, 35 N. Y. 210; *Pennsylvania Railway Co.* v. *Kerr*, 62 Penn. St. 353. It having been settled that Congress has the constitutional power to limit the common-law liability of the vessel-owner, and Congress having exercised the power, on grounds of public policy, to conserve great public interests, the statute should be liberally construed for the protection of those interests. *Tracy* v. *Troy & Boston Railway Co.*, 38 N. Y. 433; *Hudler* v. *Golden*, 36 N. Y. 446; *Prov. & N. Y. Steamship Co.* v. *Hill M'f'g. Co.*, 109 U. S. 578; giving unchecked operation to its language, rather than restricting it. Restricting maxims of interpretation are employed to save cases from the operation of a statute that are not within its reason; not to exclude cases that are within both its spirit and letter. *Woodworth* v. *State*, 26 Ohio St. 196. We have assumed that the loss or damage specified in the first two specifications of liability in § 4283 was exclusively for maritime tort of admiralty jurisdiction. But it is doubtful whether a claim for loss of life by collision, where the right of recovery rests wholly on a State statute, is a maritime tort of admiralty jurisdiction. *Crapo* v. *Allen*, 1 Sprague, 184; *Ex parte Gordon*, 104 U. S. 515–519. Such loss or damage, however, has always been held within the limitation of liability. Indeed, the liability for loss of life by marine disaster was one of the principal reasons for the statute. *Moore* v. *American Trans. Co.*, 24 How. 1; *The City of Columbus*, 22 Fed. Rep. 460; *The Amsterdam*, 23 Fed. Rep. 112. But whether injury causing death is a marine tort of admiralty jurisdiction or not, it is manifestly within the statute, because within both its letter and reason.

Thus, whether we look to the language of the statute, its object, or the effects of its application, its intent embraces the case presented by this petition.

II. The statutory rule of limited liability thus construed is a maritime rule or regulation, which courts of admiralty and

maritime jurisdiction have jurisdiction to enforce. It is contended in support of this writ that if Congress has power to limit and has limited the liability of the owner for damage by the vessel done on land as well as on water, without his privity or knowledge, still the District Court has no jurisdiction of this proceeding in admiralty, because the *tort*, not being maritime, is not of admiralty jurisdiction and cannot be brought within such jurisdiction; and that hence our remedy must be in some other tribunal.

But while the Federal courts cannot, under the Constitution, be given jurisdiction in admiralty of cases not inherently of admiralty jurisdiction, the maritime law may be changed by Congress. *The Lottawana*, 21 Wall. 558; *Prov. & N. Y. Steamship Co.* v. *Hill Manufacturing Co.*, 109 U. S. 578, 589. And when a case arises under the maritime law as changed or established by Congress it is a maritime case, although it would not have been before the change, jurisdiction of which belongs to the Federal courts as courts of admiralty and maritime jurisdiction. *Norwich Trans. Co.* v. *Wright*, 13 Wall. 104.

These citations are made to show not only that the maritime rule of limited liability, by its language and reason, included liability for *all* acts of the master and crew, in prosecuting the voyage, but that its maritime character was derived from its object—the protection and promotion of shipping. The rule does not cease to be maritime when applied to liability for an act of the captain and crew on the vessel, because the injury is consummated on the land. Its application to such a case protects shipping just as much as would its application to liability for the same act where the same amount of injury was consummated on the water. The rule being maritime, its enforcement may be in the District Court as a court of admiralty and maritime jurisdiction. See *Bogart* v. *The John Jay*, 17 How. 399; *The Guiding Star*, 18 Fed. Rep. 263; *The Brig Wexford*, 7 Fed. Rep. 674.

Error of the District Court in sustaining the foregoing positions does not warrant a writ of prohibition; but the mistake, if any, must be corrected on appeal. High Ex. Legal Rem., §§ 762, 765, 767, 770, 772; *Kinlock* v. *Harvey*, Harper, 508;

*Washburn* v. *Phillips*, 2 Met. (Mass.) 296; *Ex parte Greene*, 29 Ala. 52. It will be denied in cases of doubt. *In re Birch*, 15 C. B. 743; *The Charkieh*, L. R. 8 Q. B. 197; *Washburn* v. *Phillips*, above cited. And where there is an adequate remedy by appeal. High Ex. Legal Rem., §§ 771, 772; *State* v. *Fourth District Court of Orleans*, 21 La. Ann. 123; *People* v. *Circuit Court Wayne County*, 11 Mich. 393; *People* v. *Marine Court New York*, 36 Barb. 341; *Ex parte Peterson*, 33 Ala. 74; *Ex parte Warmouth*, 17 Wall. 64; *Ex parte Gordon*, 104 U. S. 515; *The Charkieh*, L. R. 8 Q. B. 197; *Ex parte Smyth*, 3 A. & E. 719; *State* v. *District Court Ramsey County*, 26 Minn. 233; *Ex parte Roundtree*, 51 Ala. 42. In this respect it is like mandamus. High Ex. Legal Rem., §§ 188, 189; *Ex parte Newman*, 14 Wall. 152; *State* v. *Braun*, 31 Wis. 600, 606; *Ex parte Braudlacht*, 2 Hill, 367; *Ex parte Smith*, 34 Ala. 455. Such being the office of the writ and the limitations of its use it ought not to be granted on this application. See also *Hunt* v. *Hunt*, 72 N. Y. 217; *Lange* v. *Benedict*, 73 N. Y. 12; *The Tobias Watkins*, 3 Pet. 191, 203; *Ex parte Parks*, 93 U. S. 18; *In re Yarbrough*, 110 U. S. 651; *Bradley* v. *Fisher*, 13 Wall. 335.

MR. JUSTICE BLATCHFORD, after stating the facts as reported above, delivered the opinion of the court.

It is provided by § 688 of the Revised Statutes, that this court "shall have power to issue writs of prohibition to the District Courts, when proceeding as courts of admiralty and maritime jurisdiction." This provision is taken from § 13 of the Act of September 24, 1789, 1 Stat. 80. The question to be determined is, therefore, whether the District Court has jurisdiction to entertain the proceeding in this case for the limitation of liability.

Sections 4283, 4284, and 4285 of the Revised Statutes provide as follows:

" Sec. 4283. The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, oc-

casioned, or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

Sec. 4284. Whenever any such embezzlement, loss, or destruction is suffered by several freighters or owners of goods, wares, merchandise, or any property whatever, on the same voyage, and the whole value of the vessel, and her freight for the voyage, is not sufficient to make compensation to each of them, they shall receive compensation from the owner of the vessel in proportion to their respective losses; and for that purpose the freighters and owners of the property, and the owner of the vessel, or any of them, may take the appropriate proceedings in any court, for the purpose of apportioning the sum for which the owner of the vessel may be liable among the parties entitled thereto.

Sec. 4285. It shall be deemed a sufficient compliance on the part of such owner with the requirements of this Title relating to his liability for any embezzlement, loss, or destruction of any property, goods, or merchandise, if he shall transfer his interest in such vessel and freight, for the benefit of such claimants, to a trustee, to be appointed by any court of competent jurisdiction, to act as such trustee for the person who may prove to be legally entitled thereto; from and after which transfer all claims and proceedings against the owner shall cease."

The claim to a limitation of liability in the present case is made under that clause of § 4283 which provides that " the liability of the owner of any vessel " " for any act, matter, or thing, loss, damage or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." That section does not purport to confer any jurisdiction upon a District Court. Section 4285, in providing for the transfer to a trustee of the interest of the owner in the vessel and freight, provides only that the trustee may " be appointed by any court of competent jurisdiction," leaving the question of such competency to depend on other provisions of law.

Nothing is clearer than that, by the express adjudication of this court, the District Court, as a court of admiralty, would have no jurisdiction of a suit either *in rem* or *in personam*, by any one of the sufferers by the fire, to recover damages from the vessel or her owner. It was so held in *The Plymouth*, 3 Wall. 20. In that case, a steam vessel anchored beside a wharf, in the Chicago River, in navigable water, took fire, through the negligence of those in charge of her. The flames spread to the wharf and buildings upon it. Their owners sued the owners of the steam vessel *in personam*, in the District Court for the Northern District of Illinois, in admiralty, for the damage. That court dismissed the libel for want of jurisdiction, and the Circuit Court affirmed the decree. On appeal by the libellant this court affirmed the decree of the Circuit Court. The argument in favor of the jurisdiction is very fully given in the report. It was urged that the vessel was a maritime thing; that the locality was maritime, because the vessel was moored in navigable water; that the principal thing drew after it the incident, although the damage was suffered on land; and that, under the "rule of locality," "that, in cases of tort, the jurisdiction depends on the locality of the act done, and that it must be done on navigable water," the locality of the act "embraced the entire space occupied by the agent and the object, and the spatial distance passed over by the causal influence in accomplishing the effect." But Mr. Justice Nelson, delivering the unanimous opinion of this court, said that the true meaning of the rule of locality in cases of marine torts was, that the wrong must have been committed wholly on navigable waters, or, at least, the substance and consummation of the same must have taken place upon those waters, to be within the admiralty jurisdiction. In answer to the argument that the vessel which communicated the fire was a maritime instrument, the court said that the jurisdiction did not depend on the wrong having been committed on board the vessel, but on its having been committed on navigable waters; and that the substantial cause of action, arising out of the wrong, must be complete within the locality on which the jurisdiction depended. It added: "The remedy for the injury belongs to the courts of common law."

Under this authoritative decision, as the owners of the burned property could not sue originally in the admiralty for their damages, it is impossible to see how, by the present form of proceeding, the owner of the steamer can give to the Admiralty Court jurisdiction to entertain the suits for the damage, by a practical removal of them into the Admiralty Court. For the petition of the owner of the vessel says that it desires as well to contest its liability for the damage as to claim the benefit of a limitation of liability, and it prays that it may be allowed to contest in the Admiralty Court its liability for the damage, and that, if it is not liable, there may be a decree to that effect.

As there is no foundation in the general admiralty jurisdiction of the District Court, for its assumption of jurisdiction in this case, and none in the special provisions of the statute for the limitation of liability, it is sought to uphold the jurisdiction under the Rules in Admiralty promulgated by this court in reference to the limitation of liability. The provisions of the Revised Statutes on the subject of the limitation of liability were taken from the Act of March 3, 1851, 9 Stat. 635. There is nothing in that act, nor in the corresponding enactments in the Revised Statutes, in regard to the promulgation of any rules by this court for procedure in the matter. The rules it has made, Rules 54, 55, 56, and 57, are Rules in Admiralty, promulgated May 6, 1872, 13 Wall. xii. They were announced as "Supplementary Rules of Practice in Admiralty, under the Act of March 3, 1851, entitled 'An Act to limit the liability of shipowners, and for other purposes.'" They are authoritatively embodied in, and numbered as part of, the "Rules of Practice for the Courts of the United States in Admiralty and maritime jurisdiction, on the instance side of the court, in pursuance of the Act of the 23d of August, 1842, chapter 188." The authority given to this court by the Act of 1842, was in § 6, 5 Stat. 518, and was in these words: "The Supreme Court shall have full power and authority, from time to time, to prescribe, and regulate, and alter, the forms of writs and other process to be used and issued in the District and Circuit Courts of the United States, and the forms and modes of fram-

ing and filing libels, bills, answers, and other proceedings and pleadings, in suits at common law or in admiralty and equity pending in the said courts, and also the forms and modes of taking and obtaining evidence, and of obtaining discovery, and generally the forms and modes of proceeding to obtain relief, and the forms and modes of drawing up, entering and·enrolling decrees, and the forms and modes of proceeding before trustees appointed by the court, and generally to regulate the whole practice of the said courts, so as to prevent delays, and to promote brevity and succinctness in all pleadings and proceedings therein, and to abolish all unnecessary costs and expenses in any suit therein." These provisions, as applied to suits in admiralty in the District Courts, are to be found now, with some variation, in §§ 862 and 917 of the Revised Statutes. In § 862 it is enacted that "the mode of process in causes" "of admiralty and maritime jurisdiction shall be according to rules now or hereafter prescribed by the Supreme Court, except as herein specially provided." In § 917 the enactment is, that "the Supreme Court shall have power to prescribe, from time to time, and in any manner not inconsistent with any law of the United States, the forms of writs and other process, the modes of framing and filing proceedings and pleadings, of taking and obtaining evidence, of obtaining discovery, of proceeding to obtain relief, of drawing up, entering and enrolling decrees, and of proceeding before trustees appointed by the court, and generally to regulate the whole practice to be used, in suits in equity or admiralty, by the Circuit and District Courts." The addition, in § 917, of the words "in any manner not inconsistent with any law of the United States," not found in § 6 of the Act of 1842, is worthy of note, as bearing on the construction of that section, and of rules to be sustained under its provisions, though not implying that any power existed, under the act of 1842, to make rules inconsistent with a law of the United States. So, too, by § 913 Rev. Stat. it is enacted, that "the forms of mesne process, and the forms and modes of proceeding in suits of equity, and of admiralty and maritime jurisdiction, in the Circuit and District Courts, shall be according to the principles, rules, and usages which belong to courts of

equity and admiralty, respectively, except when it is otherwise provided by statute or by rules of court made in pursuance thereof; but the same shall be subject to alteration and addition by the said courts, respectively, and to regulation by the Supreme Court, by rules prescribed, from time to time, to any Circuit or District Court, not inconsistent with the laws of the United States." These words "not inconsistent with the laws of the United States," are not found in the original statutory provisions from which § 913 was taken. See *Providence & New York Steamship Co.* v. *Hill Manufacturing Co.*, 109 U. S. 578, 591–594.

In view of the decision made by this court at December Term, 1865, in the case of *The Plymouth*, it is not to be presumed that the six of the judges upon the bench when it was made who were also upon the bench when the Rules of May 6th, 1872, were promulgated, intended that those rules should contain anything in conflict with the decision in the case of *The Plymouth*. Nor are those rules capable of any such construction. They are in these words:

"*Supplementary Rules of Practice in Admiralty, under the Act of March 3d,* 1851, *entitled 'An Act to limit the liability of shipowners, and for other purposes.'*

54. When any ship or vessel shall be libelled, or the owner or owners thereof shall be sued, for any embezzlement, loss, or destruction by the master, officers, mariners, passengers, or any other person or persons, of any property, goods, or merchandise, shipped or put on board of such ship or vessel, or for any loss, damage or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred, without the privity or knowledge of such owner or owners, and he or they shall desire to claim the benefit of limitation of liability provided for in the third and fourth sections of the said act above recited, the said owner or owners shall and may file a libel or petition in the proper District Court of the United States, as hereinafter specified, setting forth the facts and circumstances on which such limitation of liability is claimed, and praying proper relief in that behalf; and thereupon said court, having caused due appraisement to be

had of the amount or value of the interest of said owner or owners, respectively, in such ship or vessel, and her freight, for the voyage, shall make an order for the payment of the same into court, or for the giving of a stipulation with sureties for payment thereof into court whenever the same shall be ordered; or, if the said owner or owners shall so elect, the said court shall, without such appraisement, make an order for the transfer by him or them of his or their interest in such vessel and freight, to a trustee to be appointed by the court under the fourth section of said act; and, upon compliance with such order, the said court shall issue a monition against all persons claiming damages for any such embezzlement, loss, destruction, damage, or injury, citing them to appear before the said court and make due proof of their respective claims at or before a certain time to be named in said writ, not less than three months from the issuing of the same; and public notice of such monition shall be given as in other cases, and such further notice served through the post-office, or otherwise, as the court, in its discretion, may direct; and the said court shall, also, on the application of the said owner or owners, make an order to restrain the further prosecution of all and any suit or suits against said owner or owners in respect of any such claim or claims.

55. Proof of all claims which shall be presented in pursuance of said monition shall be made before a commissioner to be designated by the court, subject to the right of any person interested, to question or controvert the same; and, upon the completion of said proofs, the commissioners shall make report of the claims so proven, and upon confirmation of said report, after hearing any exceptions thereto, the moneys paid or secured to be paid into court as aforesaid, or the proceeds of said ship or vessel and freight (after payment of costs and expenses), shall be divided *pro rata* amongst the several claimants, in proportion to the amount of their respective claims, duly proved and confirmed as aforesaid, saving, however, to all parties any priority to which they may be legally entitled.

56. In the proceedings aforesaid, the said owner or owners shall be at liberty to contest his or their liability, or the lia-

bility of said ship or vessel for said embezzlement, loss, destruction, damage, or injury (independently of the limitation of liability claimed under said act), provided that, in his or their libel or petition, he or they shall state the facts and circumstances by reason of which exemption from liability is claimed; and any person or persons claiming damages as aforesaid, and who shall have presented his or their claim to the commissioner under oath, shall and may answer such libel or petition, and contest the right of the owner or owners of said ship or vessel, either to an exemption from liability, or to a limitation of liability under the said act of Congress, or both.

57. The said libel or petition shall be filed and the said proceedings had in any District Court of the United States in which said ship or vessel may be libelled to answer for any such embezzlement, loss, destruction, damage, or injury; or, if the said ship or vessel be not libelled, then in the District Court for any district in which the said owner or owners may be sued in that behalf. If the ship have already been libelled and sold, the proceeds shall represent the same for the purposes of these rules."

There is nothing in any of these rules which purports to enlarge the jurisdiction of the District Courts of the United States as to subject matter. On the contrary, they exclude any such construction, and leave that jurisdiction in admiralty, within the bounds set for it by the Constitution and statutes and the judicial decisions under them. Rule 54 provides that when a vessel is libelled, or her owner is sued, he may file a libel or petition for a limitation of liability " in the proper District Court of the United States, as hereinafter specified." Rule 56 provides that in the proceeding the owner may contest his liability or that of the vessel, independently of the limitation of liability claimed, and that the opposing party may contest the right of the owner either to an exemption from liability or to a limitation of liability. What is the "proper District Court" referred to in Rule 54 and contemplated by Rule 56? It is the court, and only the court, mentioned in Rule 57, namely, the District Court in which the vessel is libelled, or, if she is not libelled, then the District Court for

any district in which the owner "may be sued in that behalf." There is nothing in these rules which sanctions the taking of jurisdiction by a District Court on a petition under the rules, where that court could not have had original cognizance in admiralty of a suit *in rem* or *in personam* to recover for the loss or damage involved.

Nor do we find anything in any of the decisions of this court on the subject of the limitation of liability, which supports the view that a District Court can take jurisdiction in admiralty of a petition for a limitation of liability where it would not have had cognizance in admiralty originally of the cause of action involved. In *Norwich Co.* v. *Wright*, 13 Wall. 104, the case which furnished the occasion for the making of the rules, and which came before this court again in *The City of Norwich*, 118 U. S. 468, the damage was occasioned by a collision on navigable water between two vessels, and a fire resulting from it on board of one of them. In all the other cases in which this court has upheld proceedings for limitation in a District Court, there was original admiralty jurisdiction of the cause of action. In *The Benefactor*, 103 U. S. 239, the cause of damage was a collision on the high seas, and the petition for limitation was filed in the same District Court in which the offending vessel was libelled. In *The Scotland*, 105 U. S. 25, and 118 U. S. 507, there was a like cause of action, and the limitation was claimed by an answer to a libel *in personam* in a District Court. In *Ex parte Slayton*, 105 U. S. 451, the petition for limitation was filed in a District Court, by the owner of a vessel which had foundered, to limit his liability for the loss of goods carried, and for damage to another vessel by a prior collision, he not having been first sued. He transferred to a trustee appointed by the court his interest in the vessel and in the freight pending. See *The Alpena*, 10 Bissell, 436. This court, being applied to for a writ of prohibition, refused to grant it. It held that the owner of a vessel may, before he is sued, institute appropriate proceedings in a court of competent jurisdiction, to obtain a limitation of liability; that the words "any court," in § 4284, mean, "any court of competent jurisdiction;" and that, as the transfer had been made

and the freight money paid over to the trustee, the District Court had jurisdiction to apportion the fund. But it is to be noted that the causes of action were, in fact, of admiralty jurisdiction. In *Providence & New York Steamship Co.* v. *Hill Manufacturing Co.*, 109 U. S. 578, the cause of action was a loss, by the burning of a vessel, of goods carried by her, and the petition for limitation was filed in the District Court of the district where the fire occurred and where the remnants of the vessel remained, and the contract of affreightment was of admiralty cognizance. In *The Great Western*, 118 U. S. 520, the cause of damage was a collision on the high seas, and the claim to limitation was made in the answer in a suit *in personam* in a District Court in admiralty to recover for the damage.

We are brought, therefore, to the conclusion that there is nothing in the Admiralty Rules prescribed by this court which warrants the jurisdiction of the District Court in the present case.

Our decision against the jurisdiction of the District Court is made, without deciding whether or not the statutory limitation of liability extends to the damages sustained by the fire in question, so as to be enforceable in an appropriate court of competent jurisdiction. The decision of that question is unnecessary for the disposition of this case.

It is contended that the mistake of the District Court must be corrected by appeal, and that the case is not one for a writ of prohibition. Where the case is within admiralty cognizance, the District Court may decide whether the party is entitled to the benefit of the statute, and a writ of prohibition will not lie. But where, as here, the tort is not a maritime tort, there can be no jurisdiction in the admiralty to determine the issue of liability or that of limitation of liability. This court refused a writ of prohibition where a suit *in rem* was brought against a vessel, in admiralty, in a District Court, to enforce an alleged lien for wharfage, on the ground that a contract for the use of a wharf by a vessel was a maritime contract, and cognizable in the admiralty, and that, as a lien arose in certain cases, the Admiralty Court was competent to decide in the given case whether there was a lien. *Ex parte Easton*,

95 U. S. 68. So, also, a writ of prohibition was refused where a suit in admiralty was brought, in a District Court, to recover damages for the loss of life by a collision between two vessels, on the ground that damages from collision were within admiralty jurisdiction, and the Admiralty Court could, therefore, lawfully decide whether such damages embraced damages for the loss of life. *Ex parte Gordon*, 104 U. S. 515. But in the present case the District Court is called upon by the petition of the owner of the vessel to first determine the question of any liability, when it has no jurisdiction of the cause of action, and then to determine whether the statute covers the case.

The case is clearly one for a writ of prohibition, as the want of jurisdiction appears on the face of the proceedings. *United States* v. *Peters*, 3 Dall. 121.

*A writ of prohibition will issue.*