## CLEVELAND TERMINAL AND VALLEY RAILROAD COMPANY *v.* CLEVELAND STEAMSHIP COMPANY.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 84.  Argued December 17, 18, 1907.—Decided February 24, 1908.

The admiralty does not have jurisdiction of a claim for damages caused by a vessel to a bridge or dock which, although in navigable waters, is so connected with the shore that it immediately concerns commerce upon land. *The Plymouth*, 3 Wall. 20, followed, and *The Blackheath*, 195 U. S. 361, distinguished.

THIS is an appeal from a final decree of the United States District Court for the Northern District of Ohio, Eastern Division, in admiralty, dismissing appellants' libel on the appellee's exception thereto, on the ground that the court had not jurisdiction of the subject matter. It comes here directly on a certificate as to the jurisdiction under § 5 of the act of 1891.

The libel was *in rem* against the steam propeller William E. Reis, owned by appellee, and was based on injuries inflicted to the center pier of the swinging or draw bridge spanning the Cuyahoga River, a navigable stream at Cleveland, Ohio; to the protecting piling work surrounding such center pier, and one of the shore abutments of such bridge; and to a dock or wharf next below such bridge, all caused as described in the libel in substance, as follows:

The steamer Reis, during a heavy flood, broke from her

winter moorings and, drifting down the river, struck the merchant propeller Moore at her moorings, forcing her against the steamer Eads, putting her adrift, the three being carried down with the current. The Cleveland Terminal and Valley Railroad Company owned and operated a bridge across the Cuyahoga River below the mooring point of the above-named vessels, the bridge being equipped with a swinging span, supported by a center abutment or pier in the navigable channel. Surrounding the center abutment was piling intended to protect vessels from damage. The railroad company and the Detroit and Cleveland Navigation Company jointly owned a dock below, constructed on piles driven in the bed of the stream and on the shore. It was floored over, but open underneath. As the vessels drifted down the Moore struck and damaged this dock, for which claim is made. The Eads stern brought up against a pier below the bridge. The Moore brought up against the dock abreast the Eads, and the Reis, drifting stern first, entered between the Eads and the Moore, and it is said in so doing forced the Eads into collision with the center pier of the railroad company's bridge, thereby damaging the protection piling about the same, for which damages were claimed. It was also averred that as the three vessels were wedged together at the bridge the stream was partially dammed, causing the water to rise, increasing the velocity of the current underneath the keels of the Eads and the Reis, so that the current undermined the center pier and shore abutment and carried away some of the protection piling, and for restoring that piling and the support under the center pier and the pier damages were claimed. And it was further claimed that by reason of the disaster the railroad company was deprived of the use of its bridge for a period of ten days, and necessarily incurred expense to a large amount.

The usual process issued, the vessel was arrested, and later claimed and bonded by appellee, which subsequently filed its exception to the libel. On the hearing the District Court sustained the exception and dismissed the libel "on the ground

that, although the property injured by said disaster, said dock, said center pier and said protection piling work stood in the navigable water of said river, yet it does not appear from the allegations of the libel that any part of said property so injured was either an instrument of or an aid to navigation, for which reason there is no authority for sustaining the jurisdiction of a court of admiralty over the wrong complained of and the cause of action set forth in the libel."

*Mr. Roger M. Lee*, with whom *Mr. Virgil Kline* was on the brief, for appellants:

Under the holdings already made by this court, our case falls within admiralty jurisdiction in tort, because both the wrong and the injuries complained of were wholly consummated in navigable water. *The Blackheath*, 195 U. S. 361. This case seems quite sufficient authority for sustaining the jurisdiction in the case at bar. Neither the fact that the beacon in the *Blackheath* case was owned by the Government nor that it was an aid to navigation can be considered such a test of jurisdiction. *The Plymouth*, 3 Wall. 20; *Johnson v. Chicago & Pac. Elevator Co.*, 119 U. S. 388; *Homer Ramsdell Co. v. Comp. Gen. Trans.*, 182 U. S. 406, and other cases can be distinguished.

The constitutional grant of admiralty jurisdiction should be construed to cover the case made in this libel. In fact, every case of physical injury to person or property, caused by the negligent act of a ship, while such ship is in navigable water, should be held to fall within the jurisdiction of admiralty, regardless of the locality of the person or property so injured.

This should be held to be the rule in view of all the considerations, which have heretofore aided this court in its constructions of the Federal grant of admiralty jurisdiction; in view of the jurisdiction exercised anciently in England, as well as in this country during the Colonial period, and until the adoption of our Constitution, over the banks, shores and bottom soil of inland rivers and creeks and property located thereon; and in view also of the evident intent of the framers

of the Constitution, the words of the grant, the purposes of a separate system of maritime law and admiralty courts, and the objects on account of which admiralty jurisdiction was conferred upon the Federal courts, as well as the principles underlying the creation of the maritime lien, and the demands of reason and convenience.

*Mr. Harvey D. Goulder* and *Mr. Frank S. Masten,* with whom *Mr. S. H. Holding* was on the brief, for appellee.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

The certificate below included the libel in full and certified four questions; but we are not called upon to answer them *seriatim,* and must determine the case on our conclusion as to whether the record discloses a maritime tort justifying the exercise of admiralty jurisdiction.

In *The Plymouth,* 3 Wall. 20, Mr. Justice Nelson, delivering the opinion of the court, said that the true meaning of the rule of locality in cases of maritime torts was that the wrong must have been committed wholly on navigable waters, or, at least, the substance and consummation of the same must have taken place upon those waters to be within the admiralty jurisdiction. A substantial cause of action arising out of the wrong must be complete within the locality on which the jurisdiction depended. *Ex parte Phenix Insurance Company,* 118 U. S. 610.

In *Johnson* v. *Chicago & Pacific Elevated Company,* 119 U. S. 388, the jib-boom of a vessel towed by a steam tug in the Chicago River, at Chicago, struck a building on land through the negligence of the tug and caused damage to it, and it was held that the cause of action was not a maritime tort of which the admiralty court of the United States would have jurisdiction. And Mr. Justice Blatchford said (p. 397): "Under the decisions of this court in *The Plymouth,* 3 Wall. 20, and in *Ex parte Phenix Insurance Company,* 118 U. S. 610, at the

present term, it must be held that the cause of action in this case was not a maritime tort of which a District Court of the United States, as a court of admiralty, would have jurisdiction; and that the remedy belonged wholly to a court of common law; the substance and consummation of the wrong having taken place on land, and not on navigable water, and the cause of action not having been complete on such waters."

It is unnecessary to cite the numerous cases to the same effect to be found in the books. The rule stated has been accepted generally by bench and bar, and has never been overruled, though counsel express the hope that it may be because of our decision in *The Blackheath*, 195 U. S. 361. In that case Mr. Justice Brown, in concurring, announced the view that the effect of the decision was to overrule what had previously been laid down in the cases we have cited. But the court held that the opinion was not opposed to the prior adjudications, and, without entering into the elements of distinction between that case and *The Plymouth*, said (p. 367): "It is enough to say that we now are dealing with an injury to a Government aid to navigation from ancient times subject to the admiralty, a beacon emerging from the water, injured by the motion of the vessel, by a continuous act beginning and consummated upon navigable water, and giving character to the effects upon a point which is only technically land, through a connection at the bottom of the sea."

The case was a libel *in rem* against a British vessel for the destruction of a beacon, number 7, Mobile ship channel lights, caused by the alleged negligent running into the beacon by the vessel. The beacon stood fifteen or twenty feet from the channel of Mobile River, or bay, in water twelve or fifteen feet deep, and was built on piles driven firmly into the bottom. The damage was to property located in navigable waters, solely an aid to navigation and maritime in nature, and having no other purpose or function.

In the present case damage to shore dock, and to bridge, protection piling and pier, by a vessel being forced against

each of them by the vessel proceeded against, as well as damage to shore dock, abutment, protection piling, pier and dock foundation by a wash said to be due to the increased current arising from partial damming of the stream by the three vessels, brought into such position by the alleged fault of the vessel proceeded against, was sought to be recovered. But the bridges, shore docks, protection piling, piers, etc., pertained to the land. They were structures connected with the shore and immediately concerned commerce upon land. None of these structures were aids to navigation in the maritime sense, but extensions of the shore and aids to commerce on land as such.

The proposition contended for is that the jurisdiction of the admiralty court should be extended to "any claim for damages by any ship," according to the English statute; but we are not inclined to disturb the rule that has been settled for so many years because of some supposed convenience.

Unless we do that, this decree must be affirmed and

*It is so ordered.*