## UNITED STATES v. THE JOHN R. WILLIAMS et al.

### THE CABLE NO. 555.

### No. 230.

Circuit Court of Appeals, Second Circuit.

July 25, 1944.

Writ of Certiorari Denied Dec. 4, 1944.

See 65 S.Ct. 271.

See also 50 F.Supp. 409.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Robert S. Erskine, of New York City, of counsel), for respondent-claimant-appellant.

James B. M. McNally, U. S. Atty., of New York City (Vincent A. Catoggio, Jr., and William E. Collins, Sp. Assts. to U. S. Atty., both of New York City, and George C. Sprague, Sp. Asst. to Atty. Gen., of counsel), for libellant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The United States owned a submarine telephone cable designated as No. 555 ex-

tending across the Narrows at the entrance to New York Harbor and connecting Fort Wadsworth and Fort Hamilton. On the morning of August 22, 1938, the Tug John R. Williams, belonging to Great Lakes Dredge & Dock Company, was proceeding out through the Narrows to the dumping grounds with the loaded dump scow No. 54 in tow on a single steel hawser and bridle, the hawser being about 1¾ inches in diameter. The tug had out about 800 feet of hawser, and the bridle on the bow end of the scow was about 38 feet long. It was necessary for the tug to slow down in the Narrows in order that patrol boats operated by the War Department might come alongside and pick up permits required for dump scows and inspect the scow. On the morning of August 22 the tide was ebbing so that when the tug slowed down the headway of the dump scow No. 54 continued, causing the towing hawser to slacken and to drop under water. The Tug John R. Williams, after surrendering her permit and starting ahead at half speed, took a heavy list to port. This indicated to her master that her towing hawser was caught on something. He immediately slowed down his engine to about 1/3 speed and exerted strain on the hawser by means of the tug's steam towing machine in an unsuccessful effort to heave the hawser clear. When these efforts to heave the hawser clear proved unavailing, its outer end was freed by cutting the bridle on the bow of the dumpscow. As the hawser was reeled in it was found badly cut for some 150 feet.

An alarm system was maintained at Fort Hamilton to give warning in the event the cable connecting that Fort with Fort Wadsworth should be damaged, and this alarm was under constant surveillance. On the morning of August 22, 1938, at 10:38 A. M., the alarm gave the signal that the cable was out of order. Lieut.-Colonel Barrows, stationed at the Fort, looked out over the area where the cable was laid and saw a tug and dumper-scow in tow which, according to the testimony of another witness, proved to be the Tug John R. Williams and her scow. This witness also testified that the dumper was coming on with the tide and that there were men on the deck of the tug trying to free the hawser. Later inspection of cable No. 555 indicated that it had been broken and that it looked "as if it had been subjected to quite a strain just before parting". No part of it, however, came to the surface of the water at the time the tug was attempting to free the hawser.

Upon the evidence, which we have summarized, Judge Clancy entered an interlocutory decree in which he found that "in the absence of any other satisfactory explanation, we draw the conclusion of fact that the tug's wire rope was the agent which severed the libellant's cable." He also concluded that when the master of the tug recognized that the hawser was fouled, "running his boat for fifteen minutes at one-third speed and raising his hawser with the towing machine within the cable area was a violation of his duty and constituted negligence which was the proximate cause of injury to libellant's cable". His conclusion was sound. When the tugmaster ascertained that his hawser had fouled on some object that must have rested on the bottom, it was negligent to go on pulling with might and main against that object for fifteen minutes, particularly in an area in which cables were known to lie. No vessel but his was near.

The trial judge referred the matter to David V. Cahill, Esq., as commissioner to ascertain and compute damages due the United States as the owner of the cable. The commissioner reported items of damage due the libellant amounting to $1,918.67. The court confirmed his report and entered a decree in its favor to that amount, in addition to interest and costs, making an aggregate of $2,559.83.

The damages allowed in the sum of $1,918.67 consisted of expenses connected with the repairs to the cable. This amount to the extent of $724.70 is not questioned in case the injury to the cable is attributable to the respondent's negligence, as we have held to be the fact. The remainder of the $1,918.67, (after deducting $724.70) consisted of the following items:

Fuel and water used during 8½
  days' work on Cable No. 555... $   91.65
Rations of crew for 8½ days....    236.25
Pay of crew 8½ days.........    866.07

$1,193.97

The appellant contends that the above three items all represent current expenses incurred by the government's cable repair vessel Joseph Henry when engaged in repairing Cable No. 555, that these expenses during the period of the repair work were a necessary cost of maintaining a vessel

which it regularly kept for repairing cables. The appellant showed that the repairing of the cable, which was injured by the tug, did not prevent the use of the vessel for other repair work and, therefore, added nothing to the libellant's necessary outlay. But, if the government had not maintained such a vessel it would have had to employ an outside contractor to make the repairs. We can see no reason why the respondent, who caused the damage to the government's cable, should not pay the expense of the repairs while they were being made. Similar expenses were allowed by Judge Mack in The Commonwealth, D.C., 297 F. 651, and by the Circuit Court of Appeals of the Third Circuit in The A. A. Raven, 231 F. 380. See also The L-1 (The Philadelphia), D.C., 10 F.Supp. 43; The Conqueror, 166 U.S. 110, 134, 17 S.Ct. 510, 41 L.Ed. 937 The decisions where recoveries have been allowed for the use of spare boats maintained for emergencies, though such boats might not have been otherwise used at the time, support the libelant's claim. The Favorita, 18 Wall. 598, 21 L.Ed. 856; The Cayuga, 14 Wall. 270, 20 L.Ed. 828; The Mayor, D.C., 36 F. 716.

It appears from the foregoing that recovery was properly allowed against respondent, Great Lakes Dredge & Dock Company, on the merits of the litigation, but the suit was brought in admiralty and not only was Great Lakes Dredge & Dock Company made a party, but its Tug John R. Williams, in order to enforce a maritime lien. To the libel filed by the United States, the respondent and claimant raised the issue of lack of admiralty and maritime jurisdiction in the District Court. This plea was overruled by Judge Clancy, who sustained jurisdiction on the authority of United States v. North German Lloyd, D.C., 239 F. 587, and Postal Telegraph Cable Co. v. P. Sanford Ross, D.C., 221 F. 105. There have been similar decisions by district courts in both the Second and Third Circuits which have upheld admiralty jurisdiction with respect to damage done by vessels to submarine telephone and telegraph cables. The Toledo, D.C.N.J., 242 F. 168; The Majestic, D.C.S.D.N.Y., 1932 A.M.C. 1079; New York Telephone Co. v. Cities Service Transp. Co., D.C.E.D.N.Y., 23 F.Supp. 426; Bell Telephone Co. v. United States, D.C.E.D.N.Y., 1943 A.M.C. 220. But Judge Campbell declined to follow these decisions in The Russell, D.C. E.D.N.Y., 42 F.Supp. 904, 907, and two District Courts in the Fifth Circuit have held that courts of admiralty have no jurisdiction over suits for damage done by vessels to submarine telegraph cables. The Mont Agel, D.C.E.D.La., 1924 A.M.C. 401; Postal Telegraph Cable Co. v. Cananova, D.C.S.D.Fla., 1942 A.M.C. 281. The Circuit Court of Appeals of the Ninth Circuit (which is the only Court of Appeals that has considered a question almost exactly resembling the one before us) denied admiralty jurisdiction in suits for damage to submarine power cables. Nippon Yusen Kabushika Kaisha v. Great Western Power Co., 9 Cir., 17 F.2d 239, certiorari denied 274 U.S. 745, 47 S.Ct. 591, 71 L.Ed. 1325; Westfall Larson & Co. v. Allman-Hubbell Tug Boat Co., 9 Cir., 73 F.2d 200; Portland General Electric Co. v. United States, 9 Cir., 142 F.2d 552.

According to settled maritime law, if the cable had been in fault and injured the tug, a libel could have been maintained against the owner of the cable, and, as Justice Holmes said in The Blackheath, 195 U.S. 361, 365, 25 S.Ct. 46, 47, 49 L.Ed. 236, "there seems to be no reason why the fact that the injured property was afloat should have more weight in determining the jurisdiction than the fact that the cause of the injury was." While the maritime jurisdiction of the United States may be defined and in some cases extended by Congress beyond prior decisions of the courts, there has been no legislation like that by the British Parliament allowing recovery in admiralty for injuries by vessels afloat to structures on land, the use of which is not an aid to navigation. The farthest authoritative decisions have gone is to allow a suit in admiralty for injuries to beacons or clusters of piles, used for mooring vessels, where such beacons or piles, though affixed to the earth, are surrounded by water and are used as aids to navigation. The Blackheath, 195 U.S. 361, 25 S.Ct. 46, 49 L.Ed. 236 (damage by vessel to a beacon); The Raithmoor, 241 U.S. 166, 36 S.Ct. 514, 60 L.Ed. 937, (damage by vessel to a beacon in process of construction); Doullut & Williams Co. v. United States, 268 U.S. 33, 45 S.Ct. 411, 69 L.Ed. 832 (cluster of piles driven in river bottom and surrounded by water). In the case at bar there is no evidence that the cable was to be used as an aid to navigation, even if that fact would have been sufficient to sustain admiralty jurisdiction. The last three decisions we have cited somewhat ameliorated the strict general rule precluding recovery for injuries where the thing dam-

aged is connected with the earth or shore. An early decision of the Supreme Court illustrating the general rule is The Plymouth, 3 Wall. 20, 18 L.Ed. 125, where the owner of a warehouse and wharf was denied recovery in admiralty for damages suffered from fire that had started on a vessel moored to the wharf. The decision in Ex parte Phenix Ins. Co., 118 U.S. 610, 7 S.Ct. 25, 30 L.Ed. 274, was to the same effect. In Johnson v. Chicago, etc., Elevator Co., 119 U.S. 388, 7 S.Ct. 254, 30 L. Ed. 447, jurisdiction in admiralty was denied where a building on land was damaged by the jibboom of a ship. In Cleveland Terminal & V. R. R. v. Steamship Co., 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508, 13 Ann.Cas. 1215; The Troy, 208 U.S. 321, 28 S.Ct. 416, 52 L.Ed. 512, and Martin v. West, 222 U.S. 191, 32 S.Ct. 42, 56 L.Ed. 159, 36 L.R.A.,N.S., 59, jurisdiction in admiralty was denied in suits to recover for injuries to drawbridges by vessels. Likewise in The Panoil, 266 U.S. 433, 45 S.Ct. 164, 69 L.Ed. 366, recovery in admiralty was denied where a dike built out from the shore in order to deflect the current and deepen the channel, was injured by a vessel which negligently collided with it. Perhaps the case most nearly in point is The Poughkeepsie, D.C., 162 F. 494, affirmed in a Per Curiam opinion in 212 U.S. 558, 29 S.Ct. 687, 53 L.Ed. 651. There the Phoenix Construction Company had made certain pipe borings for the purpose of locating the site of an aqueduct to be built under the Hudson River in order to carry water from the Catskills to the City of New York. The boring was composed of various lengths of wrought iron pipe surrounded by a platform on the surface of the water. Respondent's steamer Poughkeepsie negligently collided with the platform and pipes with resulting damage to the latter. The bottom of the pipe was over 600 feet beneath the surface of the Hudson River, and at the point where it was situated was in about 50 feet of water. The structure was approximately 800 feet from the nearest point on the shore and was not connected with any structure attached to the land, nor was it itself attached to the land except as it was fixed to the bed of the river. The District Court for the Southern District of New York dismissed the libel filed by the Construction Company in order to recover damages to its equipment on the ground that the court lacked jurisdiction and the decision was affirmed by the Supreme Court on the authority of Cleveland Terminal & Valley Railroad Company v. Cleveland Steamship Company, 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508, 13 Ann.Cas. 1215, and The Troy, 208 U.S. 321, 28 S.Ct. 416, 52 L.Ed. 512, both cases of injury to drawbridges.

In the case at bar the cable which lay at the bottom of the river was certainly no different in respect to the question of admiralty jurisdiction from the equipment of the Construction Company in The Poughkeepsie, supra. Indeed, if a most technical view of the question were taken, the connection of the cable with the shore might make the libellant's case weaker than that of the libellant in The Poughkeepsie.

Because the decisions of the Supreme Court prelude resort to a court of admiralty in a case like the present, we hold that the libellant's claim in so far as it involves the imposition of a maritime lien, in favor of the libellant, upon the Tug John R. Williams should be dismissed and the decree against her vacated. But the claim against the respondent in personam, though not maintainable in admiralty, is good at law and may be asserted by the United States in the District Court where the action is pending. 28 U.S.C.A. § 41(1). It can make no difference that it was originally laid in admiralty. The only right which the respondent might have lost by having the case treated as one at common law was the right of trial by jury. But it laid no foundation for availing itself of that right by demanding such a trial in accordance with Rule 38, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Consequently it can have no ground of complaint. Prince Line v. American Paper Exports, 2 Cir., 55 F.2d 1053, 1056; United States ex rel. Pressprich & Son Co. v. James W. Elwell & Co., 2 Cir., 250 F. 939; Owens v. Breitung, 2 Cir., 270 F. 190, 193; Cory Bros. & Co. v. United States, 2 Cir., 51 F.2d 1010.

For the above reasons the decree is modified by vacating it and dismissing the libel as against the Tug John R. Williams and her stipulators, and is otherwise affirmed without costs to either party in this court.