### AMERICAN BRIDGE CO. v. THE GLORIA O et al.

No. A–19533.

United States District Court,
E. D. New York.
June 18, 1951.

Kirlin Campbell & Keating, New York City (Robert S. Erskine and John H. Hanrahan, Jr., New York City, of counsel), for libellant.

Purdy, Lamb & Catoggio, New York City (Vincent A. Catoggio, New York City, of counsel), for claimant-respondent.

BYERS, District Judge.

This is a motion to dismiss a libel against the tug GLORIA O, and her owner in personam, and to discharge and cancel a stipulation for value, and to direct that the libel be treated as a complaint at law, and to transfer the cause to the civil jury trial calendar. With the answer there was filed a demand for jury trial—in deference to a statement in the opinion in United States v. The John R. Williams et al., 2 Cir., 144 F. 2d 451, to the effect that such a trial had there been waived for failure of such demand.

This cause is for damage said to have been done to libellant's bridge structure and supports resulting from the striking thereof by the tug and her tow, in the Barge Canal at Jordan, N. Y., on May 10, 1950.

The claimant's purpose is to challenge the constitutionality of the Act of June 19, 1948, Ch. 526, Title 46 U.S.C.A. 740, which in terms provides: "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land * * *."

The statute thus supplants several decisions to the effect that under such circumstances a maritime tort has not been committed.

The libel sufficiently alleges that the damage complained of was done or consummated on land so far as the bridge and supports were concerned.

While in terms this motion does not seek an "injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States * * *" within Title 28 U.S.C. § 2282, such would seem to be the necessary effect of granting the motion, and perhaps therefore this Court of one judge should not proceed to a decision. Since the subject has not been discussed in oral or written argument, it will be sufficient if the point is hereby reserved for consideration upon appeal which of course is inevitable in one form or another.

The claimant's argument, if understood, is that at the time of the adoption of the Constitution, the language of Art. III, Sec. 2, defining the judicial power as extending "* * *;—to all Cases of admiralty and maritime Jurisdiction;" necessarily restricted that jurisdiction to the then contemporary concepts of its constituency which Congress was powerless to extend by any subsequent legislation. Therefore that the attempt in 1948 to recognize jurisdiction of the courts sitting in admiralty to adjudicate this case must fail for lack of congressional power.

The claimant cites the Seventh Amendment concerning suits at common law where the value in controversy exceeds twenty dollars (as here) "the right of trial by jury shall be preserved * * *."

It is argued that since this cause was cognizable at common law only prior to 1948, according to many decisions, it follows that the deprivation of a jury trial (for which the new statute makes no provision) necessarily is an additional source of invalidity.

The further argument is made that the claimant is deprived of its right to require

the libellant to establish freedom from contributory negligence under the rule in New York which would apply if the case were to be tried at common law; and that the doctrine of assumption of risk would also deprive libellant of recovery in such a suit. These are scarcely constitutional rights, for they could be changed at any time by state legislation, and will not be discussed.

Each cognate exercise of the congressional function residing in "the necessary and proper power" (Art. I, Sec. 8) has met and survived the challenge of those who asserted the same position as is here argued by the claimant. It would display temerity to recite again all that is contained in the historic survey of the development of admiralty jurisdiction in the United States, written by Chief Justice Hughes in The Thomas Barlum, 293 U.S. 21, at 42 et seq., 55 S.Ct. 31, 79 L.Ed. 176, in expounding the validity of the preferred Ship Mortgage Act, 46 U.S.C.A. § 911–984. While the decision itself was addressed to different subject-matter, the force of the following statement is not thereby impaired: 293 U.S. at page 43, 55 S.Ct. at page 38. "When the Constitution was adopted, the existing maritime law became the law of the United States 'subject to power in Congress to alter, qualify or supplement it as experience or changing conditions might require.' Panama Railroad Co. v. Johnson, 264 U.S. 375, 385–387, 44 S.Ct. 391, 393, 68 L.Ed. 748. The Congress thus has paramount power to determine the maritime law which shall prevail throughout the country (citing cases). But in amending and revising the maritime law, the Congress necessarily acts within a sphere restricted by the concept of the admiralty and maritime jurisdiction. The Belfast, 7 Wall. 624, 641, 19 L.Ed. 266; Panama Railroad Co. v. Johnson, supra; Crowell v. Benson" 285 U.S. 22, 39, 52 S.Ct. 285, 76 L.Ed. 598.

Those latter cases did not involve such subject-matter as is here in controversy.

In upholding a recovery under the Jones Act, 46 U.S.C.A. § 688, by a seaman injured while ashore in performing his duties in discharging cargo, Chief Justice Stone said in O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, at page 40, 63 S.

Ct. 488, 491, 87 L.Ed. 596, in discussing the apparent contention that the maritime law at the time of the adoption of the Constitution should remain unaltered: "There is nothing in that grant of jurisdiction— which sanctioned our adoption of the system of maritime law—to preclude Congress from modifying or supplementing the rules of that law as experience or changing conditions may require. This is so at least with respect to those matters which traditionally have been within the cognizance of admiralty courts either because they are events occurring on navigable waters, see Waring v. Clarke (5 How. 441, 12 L.Ed. 226), or because they are the subject matter of maritime contracts or relate to maritime services. Insurance Co. v. Dunham, 11 Wall. 1, 25, 20 L.Ed. 90."

"From the beginning this Court has sustained legislative changes of the maritime law within those limits." (Citing cases.)

I have been unable to find any decision, nor have counsel cited any, in which an Act of Congress, adopted pursuant to the quoted part of Art. III, Sec. 2, has been held invalid as transcending constitutional power thereby imparted.

Perhaps the observation of Mr. Justice Holmes in The Blackheath, 195 U.S. 361, at page 365, 25 S.Ct. 46, 47, 48 L.Ed. 236, affords one explanation for the lack of such negative decisions: "The precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history." He proceeds to illuminate both subjects in the passages which follow the quotation. That case upheld jurisdiction in an admiralty suit by the Government against a vessel which ran into a beacon in a channel, which was attached to the bottom. Recovery was sustained because the beacon was an aid to navigation. Mr. Justice Brown concurred, stating that in his view earlier cases were thereby overruled, namely, The Plymouth, 3 Wall. 20, 18 L.Ed. 125; Ex parte Phenix Insurance Co., 118 U.S. 610, 7 S.Ct. 25, 30 L.Ed. 274, and Chicago & Pacific Elevator Co. v. Johnson, 119 U.S. 388, 7 S.Ct. 254, which denied recovery for damage inflicted by a vessel upon land structures, upon the principle "that the ju-

risdiction of the admiralty does not extend" to such injuries.

That view, however, did not find acceptance in the later cases of Cleveland T. & V. R. Co. v. Cleveland Steamship Co., 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508; Martin v. West, 222 U.S. 191, 32 S.Ct. 42, 56 L.Ed. 159 (in which recovery in a state court, under state law, was upheld although the tort was non-maritime under cited cases), and The Panoil, 266 U.S. 433, 45 S.Ct. 164, 69 L.Ed. 366.

It is not without significance that the limited liability statute, Title 46 U.S.C.A. § 183, has been construed to apply to non-maritime torts, Richardson v. Harmon, 222 U.S. 96, 32 S.Ct. 27, 56 L.Ed. 110, and this is referred to in 293 U.S. at page 44, 55 S.Ct. at page 38, 79 L.Ed. 176, of the Thomas Barlum case, supra; to some extent, therefore, the exercise of congressional power as manifested in that statute has been held efficacious to bring into concourse a claim not cognizable in the admiralty according to The Plymouth, supra, and its progeny. Whether this can be thought of as an unconscious and indirect exercise of the challenged power, it is at least consistent with a recognition by Congress in 1948 that there was reason to clarify a situation which had become somewhat complicated by distinctions not indubitably present in the "admiralty and maritime jurisdiction" referred to in the Constitution, and which seem hard to reconcile on strictly logical grounds. That is presently deemed to have been the congressional purpose, rather than the assertion of new and alien functions, which would lie exterior to the intent and purpose of the fundamental compact.

Nor is it seen that such a construction invades any natural right of the claimant. Its tug was engaged in the performance of a maritime task upon navigable waters, and to restrict accountability for a collision to common law remedies, merely because of the incidence of the damage said to have resulted from the character of the tug's handling, would seem to be strained and artificial at best. The discussion in United States v. The John R. Williams et al., 2 Cir., 144 F.2d 451, of the divergent holdings

in such matters is thought to justify this view.

The remaining comment by claimant on the subject of a jury trial, as prescribed in the 1845 statute extending the jurisdiction of the District Courts sitting in admiralty so as to embrace causes arising upon lakes, etc., seems to indicate a contention that the absence of such a provision in the 1948 statute renders its invalid. That does not accord with the language of Chief Justice Taney in the Genesee Chief v. Fitzhugh, 12 How. 443, at page 459, 13 L.Ed. 1058, in upholding that statute, where he points out that Congress was free to provide for a jury trial in the admiralty in virtue of its control over the general subject described in the clause which has been quoted, thus: "The grant defines the subjects to which jurisdiction may be extended by Congress. But the extent of the power as well as the mode of proceeding in which that jurisdiction is to be exercised, like the power and practice in all the other courts of the United States, are subject to the regulation of Congress, except where that power is limited by the terms of the Constitution, or by necessary implication from its language. In admiralty and maritime cases, there is no such limitation as to the mode of proceeding, and Congress may therefore in cases of that description, give either party right of trial by jury, or modify the practice of the court in any other respect that it deems more conducive to the administration of justice." In that case, moreover, neither party sought a jury trial.

The language quoted does not even suggest that, in adopting the instant statute, Congress was constrained to provide for a jury trial, or that, as the claimant's brief has it, " * * * the right to a jury trial, saved the Statute from successful attack on constitutional grounds" (Citing the Genesee Chief case, supra). That statement is completely unsupported by the opinion from which the quotation was taken.

I do not understand the Williams case, supra, at page 454, to suggest that a jury trial would have been appropriate there. Attention was called merely to the fact that respondent seemingly did not regard the

case as properly a suit at common law, since no jury trial had been demanded. That was not to say that a different decision would have been reached if the anomalous procedure had been sought of asking that a jury be summoned to try in the admiralty a cause which the court held to involve a non-maritime tort.

It results from the foregoing that claimant's motion is denied in all respects.

Settle order.