Robert Lee PARKER, Plaintiff-Appellant,

v.

SOUTH LOUISIANA CONTRACTORS, INC., et al., Defendants-Appellees.

No. 75–2075.

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1976.

Rehearing and Rehearing En Banc Denied Sept. 17, 1976.

Steven B. Witman, Louis R. Koerner, Jr., New Orleans, La., for plaintiff-appellant.

Donald L. King, New Orleans, La., for So. La. Contractors, Inc., and others.

Winston E. Rice, James H. Roussel, New Orleans, La., for H. J. Serrette.

Stephen T. Victory, New Orleans, La., for Martin Exploration Corp.

Before TUTTLE, AINSWORTH and CLARK, Circuit Judges.

AINSWORTH, Circuit Judge:

This tort action raises a number of jurisdictional questions concerned primarily with the scope of federal judicial power to adjudicate maritime claims, particularly in view of the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act (hereinafter referred to as the "LHWCA" or simply as "the Act").[1] Robert Lee Parker filed this suit on August 27, 1974 to recover damages for physical injuries he suffered as a result of an accident that occurred approximately three weeks earlier.[2] Named as defendants in his complaint were Soloco Pipeline Contractors, Inc. and South Louisiana Contractors, Inc., owners and/or lessees of a barge and tug used to transport a truck that Parker was to drive; Martin Exploration Corporation, which leased and/or owned a landing on the Atchafalaya River where the injury occurred; and H. J. Serette, who owned a crewboat used to transport Parker after the accident. The District Court granted defendants' motion for summary judgment and dismissal due to lack of jurisdiction on February 19, 1975, and entered a final judgment to that effect the following day.

Appellant maintains that the District Court erred in failing to recognize that jurisdiction should have been predicated on some or all of the following bases: (1) admiralty and general maritime law under 28 U.S.C. § 1333; (2) the Admiralty Extension Act, 46 U.S.C. § 740; (3) the 1972 Amendments to the LHWCA; and (4) 28 U.S.C. § 1337, which confers jurisdiction in civil actions arising under Acts of Congress regulating commerce. We find that none of these asserted bases of jurisdiction are applicable here and therefore affirm.

## I. The Accident

At the time of the accident, Parker was employed as a truck driver by Atlas Truck Lines, Inc. On August 5, 1974, he was instructed to deliver a truckload of pipecasing to Martin Exploration Corporation at the Butte-LaRose landing on the Atchafala-

---

1. Act of Oct. 27, 1972, Pub.L.No.92–576, 86 Stat. 1251 (codified in scattered sections of 33 U.S.C. §§ 901–49).

2. According to a memorandum filed by Parker's employer in support of a motion to intervene, compensation for the injury in question is being paid under the LHWCA. As noted in the brief of appellee Serrette, appellant has also filed a timely suit against the defendants named here in a district court of the State of Louisiana.

ya River. From there, he and the truck he was driving were transported by barge to another landing on the east bank of the Atchafalaya in Iberville Parish, Louisiana, near an oil well drilling site located on land. After arriving there late at night, Parker was to drive his truck off the barge along a steel ramp designed for the loading and unloading of overland vehicles. The ramp, which weighed several tons, rested on land and had an apron extending over the water's edge which could be raised and lowered by winches to permit ingress and egress from docking barges. Before driving his truck off the barge, Parker walked along the ramp, a board road, and beyond, reconnoitering the route toward the drilling site. On his way back to the barge, he overheard members of the barge's crew saying that one of the winches was stuck. In the process of walking across the ramp to render assistance, he slipped in the unilluminated gap that ran longitudinally along the center of the ramp and suffered a severe injury to his right foot and other injuries complained of in this litigation.

## II. Admiralty and Maritime Jurisdiction under 28 U.S.C. § 1333

The Supreme Court has recently reiterated the traditional view going back to the time of Justice Story and beyond, "that the jurisdiction of the admiralty [with regard to torts] is exclusively dependent upon the locality of the act." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 205, 92 S.Ct. 418, 421, 30 L.Ed.2d 383 (1971), *quoting Thomas v. Lane*, 23 Fed.Cas. No. 13,902, pp. 957, 960 (C.C.Me.1813) (Story, J.).[3] As historically construed by the Supreme Court, maritime jurisdiction does not embrace accidents on land, or injuries inflicted to or on extensions of the land such as docks and piers. *Victory Carriers, supra*, 404 U.S. at 206–07 & nn. 3–4, 92 S.Ct. 422 & nn. 3–4; *Nacirema Operating Co. v. Johnson*, 396

U.S. 212, 214–15, 90 S.Ct. 347, 349, 24 L.Ed.2d 371 (1969).

Relying on language in *Victory Carriers* to the effect that "[t]he gangplank has served as a rough dividing line between the state and maritime regimes," 404 U.S. at 207, 92 S.Ct. at 422, appellant contends that the ramp on which his injury occurred was analogous to a gangplank, and that his claim is thus cognizable in admiralty. Appellant places particular emphasis in this regard on dicta in *O'Keeffe v. Atlantic Stevedoring Co.*, 5 Cir., 1965, 354 F.2d 48, 50, and on *Michigan Mutual Liability Co. v. Arrien*, 2 Cir., 1965, 344 F.2d 640, 644. In *O'Keeffe*, the court held that there was coverage under the LHWCA[4] for an accidental death which occurred when a longshoreman working on a dock was snagged by a ship's boom, swung against either the dock or the ship, and dropped into the intervening water. In reaching this result, the *O'Keeffe* court noted that

> a gangplank, not being permanently attached to the land, and traditionally, if not always so in fact, a part of the equipment of the ship, is regarded as a part of the ship so that an injury occurring upon a gangplank is regarded as having occurred upon navigable waters.

354 F.2d at 50. Then, recapitulating the holding in *Arrien, supra*, the *O'Keeffe* court continued,

> This rule has been recently extended so as to include, as being over water, a skid which was impermanently affixed to the wharf although sufficiently connected with the land as to sustain an award to an injured longshoreman under a state workmen's compensation act. [Citing *Arrien*.]

*Id.* Unlike the ramp in the present case, the skid involved in *Arrien* and referred to in *O'Keeffe* extended entirely over water,

---

**3.** In its recent decision in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972), the Supreme Court held that a wrong must "bear a significant relationship to traditional maritime activity" in addition to complying with the established "locality" test in order for

admiralty jurisdiction to attach. The effect, of course, was to make the test for admiralty jurisdiction even more stringent than it was under the locality test alone.

**4.** 33 U.S.C. §§ 901–49.

and could be easily dismantled and stored on the wharf when not in use. *See Arrien, supra,* at 642–44. It was a removable wooden platform, approximately six feet by ten feet, which extended over the waters between vessel and wharf. *Id.* at 642. In contrast, the ramp in the present case rested on land, and removing it would involve a major undertaking calling for heavy equipment. Unlike a gangplank, it cannot reasonably be conceived as an appurtenance of the barges that use it for docking. *Cf. Davis v. W. Bruns & Co.,* 5 Cir., 1973, 476 F.2d 246, 248 (worker injured in conveyor apparatus used to unload bananas on a pier could not recover in admiralty because conveyor was not an appurtenance of the vessel being unloaded at the time of the accident). Since Parker's accident thus occurred on a land-based structure most closely resembling a dock or pier, we conclude that his claim does not come within admiralty jurisdiction under the principles reiterated in *Victory Carriers* regarding extensions of land. The fact that the point on the ramp where Parker fell may have been above water at the time of his injury does not alter this conclusion. *See, e. g., Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969); *Bible v. Chevron Oil Co.,* 5 Cir., 1972, 460 F.2d 1218; *Hastings v. Mann,* 4 Cir., 1965, 340 F.2d 910, *cert. denied,* 380 U.S. 963, 85 S.Ct. 1106, 14 L.Ed.2d 153 (1965).

### III. The Admiralty Extension Act

Congress passed the Admiralty Extension Act, 46 U.S.C. § 740, to permit recovery in situations where a ship or its gear causes damage or injury on shore. Under that act,

> [t]he admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.

In *Gutierrez v. Waterman Steamship Corp.,* 373 U.S. 206, 209–10, 83 S.Ct. 1185, 1188, 10 L.Ed.2d 297 (1963), the Supreme Court held that a claim for injuries suffered by a longshoreman who slipped on some loose beans on a dock came within federal maritime jurisdiction under the Admiralty Extension Act, since the beans were spilled as a result of negligence on the part of the shipowner in allowing beans packed in defective bags to be unloaded. In contrast, Parker's injury was in no sense "caused by a vessel on navigable water," and his contention that jurisdiction could have been predicated on 46 U.S.C. § 740 is accordingly without merit.

### IV. Impact of the 1972 Amendments

Parker next contends that even if his claim was not cognizable in admiralty prior to the enactment of the 1972 Amendments to the LHWCA,[5] the passage of those Amendments had the effect of extending admiralty jurisdiction sufficiently to embrace his claim. His argument takes note of the fact that the Amendments broadened coverage under the Act to make compensation available for injuries occurring upon the navigable waters of the United States, "including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel." 33 U.S.C. § 903(a) (as amended). Essentially, his contention seems to be that in view of this broadened coverage, it necessarily follows that admiralty jurisdiction with regard to third party claims such as his own had experienced a parallel widening. The fact that compensation coverage was expanded to ensure that the availability of compensation benefits would no longer depend upon the "fortuitous circumstance of whether the injury occurred on land or over water,"[6] however, does not imply that admiralty jurisdiction has been extended to embrace noncompensation claims brought by employees against parties other than their employers.

5. Act of Oct. 27, 1972, Pub.L.No.92–576, 86 Stat. 1251 (codified in scattered sections of 33 U.S.C. §§ 901–49).

6. 1972 U.S.Code Cong. & Admin.News at p. 4708.

Indeed, a careful reading of the provision of the 1972 Amendments governing third party actions and the pertinent legislative history leads us to the opposite conclusion.

The provision in question effectuated a fundamental restructuring of the rights and remedies available to harbor workers in third party actions. Specifically, it provides:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party . . . and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.

33 U.S.C. § 905(b).[7] The principal aim of this section was to legislatively overrule *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) and *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), which allowed an injured employee to impose indirect liability on his employer for damages in excess of compensation limits. Thus, section 905(b) is primarily designed to prevent continued circumvention of section 905(a) of the LHWCA, which makes compensation the employee's exclusive remedy against his employer.

■■■ Of particular importance in the present case is the fact that section 905(b)

eliminates only an injured worker's right to bring actions against third parties based on unseaworthiness, and preserves his right under prior law to recover for third party negligence. Although the relevant legislative history created some confusion by failing to specify with sufficient clarity the precise standard of care to be applied in such third party negligence actions,[8] it leaves little doubt that Congress did not intend section 905(b) to create a new or broader cause of action in admiralty:

> The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, *and not to endow him with any special maritime theory of liability or cause of action* under whatever judicial nomenclature it may be called, such as "unseaworthiness", "non-delegable duty", or the like.
>
> Persons to whom compensation is payable under the Act *retain* the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-enacted doctrine of unseaworthiness.

1972 U.S.Code Cong. & Admin.News at p. 4703 (emphasis added). Taken as a whole, the manifest purpose of section 905(b) is to curtail rather than expand the availability of third party actions in admiralty. With respect to third party actions for negligence, the reasonable inference is that the boundaries of maritime jurisdiction as defined under prior law (*e. g., Victory Carriers*) were neither expanded nor constricted by passage of the 1972 Amendments, but simply retained. Accordingly, Parker can

---

**7.** The term "vessel" is defined extremely broadly under 33 U.S.C. § 902(21), which was added by the 1972 Amendments, to include "said vessel's owner, owner pro hac vice, agent, operator, charter [*sic*] or bare boat charterer, master, officer, or crew member." "[A]n action against [the] vessel" under section 905(b) thus appears to embrace what have traditionally been called libels in personam as well as libels in rem. G. Gilmore and C. Black, The Law of Admiralty 450 (2d ed. 1975). In light of the breadth of the term "vessel" as defined in section 902(21), it will be convenient in what follows to refer to actions against the vessel simply as third party actions.

**8.** *See, e. g.*, G. Gilmore and C. Black, the Law of Admiralty 453–55 (2d ed. 1975); Comment, *Negligence Standards under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act: Examining the Viewpoints*, 21 Vill.L.Rev. 244, 255–60 (1976).

draw no jurisdictional solace from the shoreward extension of compensation coverage under the Amendments, since at least with regard to third party negligence claims such as those involved in his case, the Amendments envisage no parallel extension of admiralty jurisdiction.

V. Section 1337 Jurisdiction

■ Finally, appellant maintains that jurisdiction to consider his claim exists under 28 U.S.C. § 1337, which provides:

> The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

Appellant contends that his action arises under the LHWCA, as amended in 1972. Since he does not seek relief against his employer, the only provision of the LHWCA under which Parker's action may even arguably be thought to arise is section 905(b), governing third party actions for negligence. As has been indicated in the preceding discussion, however, section 905(b) merely preserves an injured worker's right to recover damages from third parties in accordance with nonstatutory negligence principles. Thus, appellant may not convert an ordinary tort claim into a federal cause of action by invoking a statutory provision such as section 905(b) as a predicate for section 1337 jurisdiction.

VI. Conclusion

Since none of the alleged bases of jurisdiction advanced by appellant withstand analysis, we conclude that the District Court properly held there was no jurisdiction to consider this case.

AFFIRMED.